**COMMONWEALTH OF PENNSYLVANIA,**
Appellee

v.

**Stanley Vincent CHARLTON, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted March 13, 2006.

Filed June 23, 2006.

David J. Long, Reading, for appellant.

Alisa R. Hobart, Assistant District Attorney, Reading, for Commonwealth, appellee.

BEFORE: GANTMAN, McCAFFERY and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Stanley Vincent Charlton, Jr., appeals from the December 15, 2004, aggregate judgment of sentence of ten (10) years, three (3) months to thirty-two (32) years imprisonment, to be followed by six (6) years probation, imposed after a jury found him guilty of rape,[1] involuntary deviate sexual intercourse,[2] incest,[3] endangering the welfare of a child,[4] corruption of minors,[5] and three counts each of indecent exposure[6] and indecent assault.[7] After careful review, we affirm the judgment of sentence.

¶ 2 On July 23, 2003, appellant was charged with 18 offenses in connection with several incidents of sexual abuse that occurred between him and his daughter from July 1998 to May 2001. On December 29, 2003, appellant entered a guilty plea to some of the aforementioned charges but thereafter, on July 1, 2004, he requested permission to withdraw the plea. Permission was granted that same day. Appellant proceeded to trial on October 12, 2004, and ultimately was found guilty as indicated above. During the course of the trial, the court permitted the victim to testify via closed-circuit television.

¶ 3 On December 15, 2004, a Megan's Law hearing was held, during which the court determined appellant met the criteria for classification as a sexually violent predator (SVP) and appellant was sentenced as indicated above. Appellant filed post-sentence motions on December 27, 2004, which were denied on December 29, 2004. A notice of appeal was filed on January 6, 2005, and the court ordered appellant to file a Rule 1925(b) statement. No concise statement was filed in response to the trial court's Order, and on March 8, 2005, the court filed a Memorandum Opinion stating it was unable to review the matter.

¶ 4 On May 2, 2005, appellant's counsel filed a motion and brief to withdraw from representation in accordance with *Commonwealth v. McClendon,* 495 Pa. 467, 434 A.2d 1185 (1981), and its federal precursor, *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The court subsequently granted counsel's request on May 24, 2005, and on June 20,

---

1. 18 Pa.C.S.A. § 3121(a)(6).

2. *Id.* § 3123(a)(6).

3. *Id.* § 4302.

4. *Id.* § 4304(a).

5. *Id.* § 6301(a)(1).

6. *Id.* § 3127(a).

7. *Id.* § 3126(a)(7).

2005, appellant filed a motion for appointment of new counsel. Shortly thereafter, the court appointed the Berks County Public Defenders Office to represent appellant. On August 4, 2005, counsel filed a petition for permission to file a Rule 1925(b) Statement *nunc pro tunc*, and this Court remanded the case on September 14, 2005. The court granted appellant's request on September 22, 2005, and his Rule 1925(b) statement was filed on October 6, 2005.

■ ¶ 5 Now on appeal, appellant first argues the trial court erred "by allowing the Commonwealth to present evidence by closed circuit television where the Commonwealth failed to meet its burden for such evidence pursuant to the statute." Appellant's brief at 7, 14.

¶ 6 The manner and circumstances under which a child victim of sexual assault is permitted to testify outside the presence of a defendant is governed by 42 Pa.C.S.A. § 5985, **Testimony by contemporaneous alternative method.** The current version of this statute was enacted by our legislature on July 15, 2004 following a series of amendments to the Confrontation Clause in Article 1, Section 9, of the Pennsylvania Constitution, and our Supreme Court has affirmed an Order and Opinion of the Commonwealth Court upholding these amendments. *Bergdoll v. Commonwealth,* 858 A.2d 185 (Pa.Commw.2004) (en banc), *affirmed,* 583 Pa. 44, 874 A.2d 1148 (2005).[8] Unlike its prior counterpart, the current version of the statute has not been recognized as unconstitutional. *See Bergdoll v. Kane,* 557 Pa. 72, 731 A.2d 1261 (1999); *Commonwealth v. Louden,* 536 Pa. 180, 638 A.2d 953 (1994).

¶ 7 In relevant part, section 5985 provides "in any prosecution or adjudication involving a child victim or a child material witness, the court may order that the testimony of the child victim or child material witness be taken under oath or affirmation in a room other than the courtroom and transmitted by a contemporaneous alternative method," including via closed-circuit television. 42 Pa.C.S.A § 5985(a), **Contemporaneous alternative method.** Section 5985 further requires that the court "permit the defendant to observe and hear the testimony of the child victim or child material witness," and requires a showing that:

> testifying either in an open forum in the presence and full view of the finder of fact or in the defendant's presence will result in the child victim or child material witness suffering serious emotional distress that would substantially impair the child victim's or child material witness's ability to reasonably communicate.

*Id.;* 42 Pa.C.S.A. § 5985(a.1), **Determination.** This burden can be satisfied via a hearing with the child victim or through "testimony of a parent or custodian or any other person, such as a person who has dealt with the child victim or child material

---

8. *Bergdoll v. Commonwealth,* 858 A.2d 185 (Pa.Commw.2004) (en banc), *affirmed,* 583 Pa. 44, 874 A.2d 1148 (2005), involved a petition filed by practicing attorneys in Pennsylvania who sought to void amendments to the Pennsylvania Constitution which affected criminal defendants' rights to confront witnesses and allowed the General Assembly to enact laws regarding the manner in which children could testify in criminal proceedings. The Court held, *inter alia,* that the removal of the "face to face" language from the confrontation clause in the Pennsylvania Constitution did not result in an infringement of the federally protected right of a criminal defendant to confront witnesses; and an amendment allowing the General Assembly to enact laws regarding the manner in which children could testify in criminal proceedings did not violate the separation of powers doctrine. *Id.* at 202–203.

witness in a medical or therapeutic setting." *Id.* at § 5985(a.1)(1), (2).

¶ 8 Following our careful review of the record, we find the Commonwealth clearly satisfied its burden with respect to section 5985, and find no error on the part of the trial court in permitting the victim to testify via closed-circuit television. A hearing was held on October 7, 2004 to determine whether the victim should be permitted to testify via a contemporaneous alternative method. *See* N.T., Motion in Limine, 10/7/04, at 1. At the hearing, the Commonwealth presented the expert testimony of Laura Darrow, a psychotherapist at the Florence Child Guidance Center who specialized in adolescent trauma and had the opportunity to treat the victim. *Id.* at 13–14, 17–18. Darrow testified the victim suffered from depression, suicidal thoughts, and post-traumatic stress disorder which likely would impact her ability to testify effectively. *Id.* at 20–23, 25–26. Darrow further testified that she "personally witnessed [the victim] regress and behave as a very young child" when questioned about the sexual abuse and that requiring her to testify in an open forum "poses a significant risk for her emotional wellbeing." *Id.* at 22–23. Darrow also opined "the presence of the defendant in the courtroom with [the victim] will send her into an emotional tailspin" and ultimately "impair her ability to reasonably communicate with...the jury." *Id.* at 24, 31–32. Based on the foregoing, we agree with the trial court that "closed circuit television testimony was both necessary and a reasonable alternative." Trial Court Opinion, Parisi, J., 10/28/05, at 6. Accordingly, we reject appellant's claim of error.

¶ 9 Appellant next contends the court erred by admitting out-of-court statements of the child victim to Pennsylvania State Police Trooper James Marasco and Brandon Clinton, an employee with Berks County Children and Youth Services, into evidence under the tender years exception to the hearsay rule. Appellant's brief at 7, 17.

¶ 10 In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference. It is firmly established, "[q]uestions concerning the admissibility of evidence lie within the sound discretion of the trial court, and [a reviewing court] will not reverse the court's decision on such a question absent a clear abuse of discretion." *Commonwealth v. Chmiel,* 558 Pa. 478, 493, 738 A.2d 406, 414 (1999), *cert. denied,* 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000). An abuse of discretion requires "not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Widmer,* 560 Pa. 308, 322, 744 A.2d 745, 753 (2000) (citation omitted).

¶ 11 Generally, an out-of-court statement is inadmissible at trial unless it falls into one of the exceptions to the hearsay rule. *Commonwealth v. Bean,* 450 Pa.Super. 574, 677 A.2d 842 (1996). "The rationale for the hearsay rule is that hearsay is too untrustworthy to be considered by the trier of fact. Exceptions have been fashioned to accommodate certain classes of hearsay that are substantially more trustworthy than hearsay in general, and thus merit exception to the hearsay rule." *Id.* at 844 (citations omitted).

¶ 12 The tender years exception to the rule against hearsay is set forth in 42 Pa.C.S.A. § 5985.1, Admissibility of certain statements. In relevant part, section 5985.1 provides that a hearsay statement of a child sexual abuse victim under the age of twelve is admissible provided the

evidence is relevant and the time, content and circumstances of the statement provide sufficient indicia of reliability. *Commonwealth v. O'Drain*, 829 A.2d 316 (Pa.Super.2003); 42 Pa.C.S.A. § 5985.1(a), General rule. "The tender years exception allows for the admission of a child's out-of-court statement due to the fragile nature of young victims of sexual abuse." *Commonwealth v. Fink*, 791 A.2d 1235, 1248 (Pa.Super.2002) (citation omitted).

¶ 13 Here, as indicated above, the court permitted the Commonwealth to introduce out-of-court statements made by the victim to State Trooper James Marasco and Berks County Children and Youth Services employee Brandon Clinton, pursuant to the tender years exception to the hearsay rule. N.T., 10/12–14/04, at 141–146, 150–158. Appellant argues "the admission of the tender years evidence violated [his] constitutional right to confrontation under *Crawford v. Washington*, 541 U.S. 36, [124 S.Ct. 1354, 158 L.Ed.2d 177] (2004)." Appellant's brief at 13, 17–19. The trial court determined the admission of the victim's out-of-court statements was proper, specifically noting appellant's defense counsel had the opportunity to cross-examine the victim "with regards to statements she made to other people about these incidents." Trial Court Opinion at 8. Following careful consideration and a conscientious review of the record, we find *Crawford* to be distinguishable from this case and we agree with the trial court that the victim's hearsay testimony was admissible pursuant to the tender years exception.

¶ 14 In *Crawford, supra*, the United States Supreme Court overruled prior precedent and established a new framework for analyzing claims relative to the Confrontation Clause of the Sixth Amendment. Prior to *Crawford*, any out-of-court statement could be admitted without of-

fending the Confrontation Clause as long as "the evidence [fell] within a firmly rooted hearsay exception or...contain[ed] particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statements' reliability." *Lilly v. Virginia*, 527 U.S. 116, 124–125, 119 S.Ct. 1887, 1894, 144 L.Ed.2d 117 (1999), *citing Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (internal quotations omitted). *Crawford* rejected the general framework set forth in *Roberts* with respect to prior testimonial statements, holding that out-of-court statements by witnesses that are testimonial are barred under the Sixth Amendment to the United States Constitution unless "the declarant is unavailable, and...the defendant has had a prior opportunity to cross-examine," regardless of whether such statements are deemed reliable by the trial court. *Crawford, supra* at 59, 124 S.Ct. at 1369 (citations omitted). *Crawford* involved the question of whether an out-of-court statement made by a defendant's wife that partially implicated him in an assault and attempted murder was admissible where the wife did not testify at trial due to the defendant's invocation of spousal privilege. *Id.* at 40, 124 S.Ct. at 1357. The court found the admission of the wife's pre-trial statement to police violated the Confrontation Clause because defendant did not have the opportunity to cross-examine her. *Id.* at 68–69, 124 S.Ct. at 1373–1374.

¶ 15 Here, unlike *Crawford*, the record reveals the victim testified at length regarding the underlying events at both the pretrial competency hearing and the jury trial, and appellant had more than ample opportunity to confront and cross-examine her in each instance. N.T., 10/12–14/04, at 7–16, 59–124. Accordingly, we do not find the concerns of *Crawford* are implicated in

this case. Appellant's claim of trial court error is without validity.

¶ 16 Appellant next argues the trial court erred in denying his motion for a new trial "as the verdict was against the weight of the evidence." Appellant's brief at 7, 19. Scrutiny of whether a verdict is against the weight of the evidence is governed by the standard set forth in *Commonwealth v. Champney*, 574 Pa. 435, 832 A.2d 403 (2003).

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Id.* at 443, 832 A.2d at 408 (citations omitted).

¶ 17 "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Galindes*, 786 A.2d 1004, 1013 (Pa.Super.2001) (citation omitted). "[A]n appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determina-

tion that the verdict is against the weight of the evidence," as the trial judge is in the best position to view the evidence presented. *Commonwealth v. Wright*, 865 A.2d 894, 915 (Pa.Super.2004) (citations omitted).

¶ 18 In this case, appellant was found guilty of rape, involuntary deviate sexual intercourse, incest, endangering welfare of a child, corruption of minors, and three counts each of indecent exposure and indecent assault. A person is guilty of rape, a felony of the first degree, "when the person engages in sexual intercourse with a complainant...who is less than 13 years of age." 18 Pa.C.S.A. § 3121(a)(6).[9] Likewise, a person is guilty of involuntary deviate sexual intercourse "when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3123(a)(6).[10] Sexual intercourse is defined as "intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S.A. § 3101, **Definitions.**

¶ 19 A person will be found guilty of incest, a felony of the second degree, "if that person knowingly marries or cohabits or has sexual intercourse with an ancestor or descendant, a brother or sister of the whole or half blood or an uncle, aunt, nephew or niece of the whole blood." 18 Pa.C.S.A. § 4302, Incest.

¶ 20 The crime of endangering the welfare of children is governed by 18 Pa. C.S.A. § 4304, which provides:

> (a) **Offense defined.**—A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of the child by vio-

---

**9.** Section 3121(a)(6) was deleted by 2002, Dec. 9, P.L. 1350, No. 162, § 2; it is now incorporated into section 3121(c), **Rape of a child.**

**10.** Section 3123(a)(6) was deleted by 2002, Dec. 9, P.L. 1350, No. 162, § 2; it is now incorporated into section 3123(b), **Involuntary deviate sexual intercourse with a child.**

lating a duty of care, protection or support.

18 Pa.C.S.A. § 4304, **Endangering welfare of children,** (a). A person is guilty of corruption of minors if he or she, "being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age...." 18 Pa.C.S.A. § 6301, **Corruption of minors,** (a) Offense defined.

¶ 21 In relevant part, indecent assault is defined as:

(a) Offense defined.—A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

\*　　\*　　\*　　\*　　\*　　\*

(7) the complainant is less than 13 years of age[.]

18 Pa.C.S.A. § 3126, **Indecent assault,** (a)(7). Indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S.A. § 3101, *supra.* And lastly, a person is guilty of indecent exposure "if that person exposes his or her genitals in any public place or in any place where there are present other persons under circumstances in which he or she knows or should know that this conduct is likely to offend, affront or alarm." 18 Pa.C.S.A. § 3127, **Indecent exposure,** (a) Offense defined.

¶ 22 After careful review, we are satisfied that the victim's testimony was sufficient to permit the jury to conclude beyond a reasonable doubt that appellant was guilty of all the crimes charged. In this case, the victim, appellant's daughter, testified that appellant rubbed his penis against her, touched her vagina, and had sexual intercourse with her on multiple occasions when she was approximately 4½ years old. N.T., 10/12–14/04, at 63–74, 77–80. To the contrary, appellant denied he sexually assaulted the victim, and made multiple attempts to discredit her testimony. *Id.* at 102–104, 107–108, 115–116, 197–199.

¶ 23 This Court has long-recognized "that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses." *Commonwealth v. Davis,* 437 Pa.Super. 471, 650 A.2d 452, 455 (1994). "If the factfinder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict." *Commonwealth v. Hopkins,* 747 A.2d 910, 914 (Pa.Super.2000) (citation omitted). Here, the jury obviously found the victim's testimony credible and chose not to believe appellant's version of the events. It was within the province of the jury as fact-finder to resolve all issues of credibility, resolve conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge appellant guilty. *Commonwealth v. Gooding,* 818 A.2d 546 (Pa.Super.2003). Based on the foregoing, we cannot conclude that the verdict is so "contrary to the evidence as to shock one's sense of justice." *Champney, supra.* Accordingly, we conclude the verdict was supported by the weight of the evidence and appellant's allegation of error must fail.

¶ 24 Lastly, appellant contends the evidence presented by the Commonwealth was insufficient to prove he is a SVP. Appellant argues "the trial court

erred by classifying [him] as a sexually violent predator where the Commonwealth failed to prove by clear and convincing evidence that [he] meets the statutory criteria of a sexually violent predator." Appellant's brief at 7, 20. Our standard of review in assessing a challenge to the sufficiency of the evidence is well-settled.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. DiStefano,* 782 A.2d 574, 582 (Pa.Super.2001) (citations and quotations omitted). "In reviewing the sufficiency of the evidence regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied." *Commonwealth v. Haughwout,* 837 A.2d 480, 484 (Pa.Super.2003) (citation omitted).

¶ 25 We conclude the Commonwealth presented ample evidence to prove appellant is a SVP. Under Pennsylvania's Megan's Law II, 42 Pa.C.S.A. §§ 9791–99, a SVP is defined as "a person who has been convicted of a sexually violent offense...and who is determined to be a sexually violent predator under section 9795.4...*due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.*" 42 Pa.C.S.A. § 9792, **Definitions** (emphasis added). Mental abnormality is "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." *Id.* Moreover, predatory is defined as "[a]n act directed at a stranger or at a person with whom a relationship has been established or promoted for the primary purpose of victimization." *Id.*

¶ 26 The statute specifically details the process by which an individual is determined to be a SVP. After an individual is convicted of an enumerated offense under section 9795.1, **Registration,** the trial court must order the State Sexual Offenders Assessment Board (Board) to determine whether the individual qualifies for SVP classification. *See* 42 Pa.C.S.A. § 9795.4, Assessment, (a). An administrative officer of the Board then assigns one of its members to conduct an assessment. The determination of whether an individual should be classified as a SVP is governed by examination of the following factors:

(1) **Facts of the current offense, including:**

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) **Prior offense history, including:**

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) **Characteristics of the individual, including:**

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) **Factors that are supported in a sexual offender assessment filed as criteria reasonably related to the risk of reoffense.**

42 Pa.C.S.A. § 9795.4(b) (emphasis added). Following the submission of a written assessment report and a praecipe filed by the district attorney, the trial court must hold a hearing. During the hearing, the Commonwealth bears the burden of proving the defendant is a SVP by clear and convincing evidence. 42 Pa.C.S.A. § 9795.4(e)(3); *see also Commonwealth v. Lipphardt,* 841 A.2d 551 (Pa.Super.2004).

¶ 27 In the instant case, appellant was convicted of rape, involuntary deviate sexual intercourse, incest and indecent assault, all enumerated offenses under section 9795.1. A Megan's Law hearing was held on December 15, 2004, at which the Commonwealth presented the expert testimony of Dr. Veronique N. Valliere, a licensed psychologist who was appointed by the Board to conduct a clinical evaluation and assessment of appellant. Notably, appellant did not provide an expert to counter Dr. Valliere's testimony.

¶ 28 Dr. Valliere determined appellant met the criteria for classification as a SVP based upon her review of the case and assessment of appellant. N.T., Sentencing Hearing, 12/15/04, at 10–11. Dr. Valliere testified that appellant exhibited the mental abnormality of pedophilia, and "promoted a relationship with the victim for the purposes of victimization." *Id.* at 12–15. Contrary to appellant's contentions, Dr. Valliere further reasoned that appellant was likely to engage in predatory sexually offenses as a result of his abnormality. *Id.* In formulating her opinion, Dr. Valliere thoroughly addressed the factors listed in the Megan's Law II statute, including appellant's age, level of comfort in his ability to control and manage the victim, absence of anxiety, and the highly scripted nature of the sexual abuse. *Id.* at 13–14. Dr. Valliere further noted that appellant's anal penetration of such a small child and the fact he abused the caretaker relationship in order to obtain sexual gratification clearly indicated he possesses some sexual deviance as to children. *Id.* at 15–18. Moreover, Dr. Valliere acknowledged on cross-examination that the recidivism rate

is lower for those offenders who choose to engage in incestuous relationships, but also noted "[f]or people with pedophiliac interests, their ability to reoffend tends to persist." *Id.* at 17, 25–26. Based on the foregoing, the evidence is clearly and convincingly sufficient to support the trial court's determination that appellant is a SVP. Accordingly, appellant's claim must fail.

¶ 29 Having carefully reviewed the record and considered the issues asserted by appellant, we affirm the judgment of sentence.

¶ 30 Judgment of sentence affirmed.