**Commonwealth v. O'Donnell**

*Patricia Coonahan,* for Commonwealth.
*Thomas C. Egan III,* for defendant.

FURBER, *J.,* April 28, 2009—On June 5, 2008, at the conclusion of a non-jury trial that began on May 27, 2008, we found the defendant, Mark Patrick O'Donnell, guilty of first-degree murder, two counts of involuntary deviate sexual intercourse, indecent assault, tampering with evidence, abuse of a corpse, and possession of drugs and drug paraphernalia. We found him not guilty of possession with intent to deliver. Following a penalty hearing we decided on a term of life imprisonment for the first-degree murder conviction. On January 8, 2009 we formally imposed the life sentence, followed by consecutive terms of 10 to 20 years and one to two years imprisonment. Mr. O'Donnell filed his appeal to the Superior Court on January 16, 2009.

We directed him to file a statement of errors complained of on appeal, and, upon review and a determination that the statement filed was too general to define the issues presented, ordered defendant to file a supplemental statement. He filed that document within the time allowed.

Defendant asserts on appeal that the evidence was insufficient to sustain convictions of first-degree murder and involuntary deviate sexual intercourse, or, in the alternative that those verdicts were against the weight of the evidence. With regard to first-degree murder he states:

"The appellant asserts the evidence was insufficient given the testimony of the psychiatrists, the undisputed

intoxication of the appellant, the circumstances of the offense, the lack of premeditation, the lack of specific intent to kill, and the utter void of any prior problems between the deceased and the appellant."

With regard to the weight of the evidence:

"The appellant asserts that the credible testimony presented in the trial should have led the fact-finder to conclude that the appellant was clearly intoxicated, and, such intoxication prevented him from forming the mens rea necessary for first-degree murder."

As to involuntary deviate sexual intercourse, the same reason is given for both sufficiency and weight:

"The appellant asserts that evidence was insufficient given the complete lack of any forensic evidence linking the appellant to a sexual assault, the lack of any implement which was used or could have been used by the appellant for the sexual assault, the presence of Caucasian hairs on the deceased lips when the appellant is African American, and the clear expert testimony that the sexual activity could have occurred prior to the appellant's arrival at the apartment."

In *Commonwealth v. Vandivner*, 599 Pa. 617, 962 A.2d 1170 (2009), the Supreme Court held that when reviewing a claim the evidence is insufficient, the court must consider the evidence in the light most favorable to the Commonwealth to determine if the evidence and all reasonable inferences are sufficient to establish the elements of the offense beyond a reasonable doubt. 599 Pa. at 627, 962 A.2d at 1176. A claim the verdict is against the weight of the evidence will be upheld only when the

conviction is so contrary to the evidence as to shock one's sense of justice. 599 Pa. at 630, 962 A.2d at 1177-78; *Commonwealth v. Charlton,* 902 A.2d 554, 561 (Pa. Super. 2006), *allocatur denied,* 590 Pa. 655, 911 A.2d 933 (2006). Whether a defendant's faculties and sensibilities were so overwhelmed with drugs that he could not form the specific intent to kill is a question of fact solely within the province of the trier of fact, who is free to believe any, all or none of the testimony regarding intoxication. *Commonwealth v. Vandivner,* 599 Pa. 617, 628-29, 962 A.2d 1170, 1177 (2009). The evidence need not preclude every possibility of innocence, *Commonwealth v. Andrulewicz,* 911 A.2d 162, 165 (Pa. Super. 2006), *allocatur denied,* 592 Pa. 778, 926 A.2d 972 (2007), nor exclude all possibility that a third party may have committed the crime. *Commonwealth v. Akers,* 392 Pa. Super. 170, 181, 572 A.2d 746, 751 (1990).

The evidence led us to conclude, beyond a reasonable doubt, that the defendant committed involuntary deviate sexual intercourse on 14-year-old Ebony Dorsey by inserting a cylindrical object into her vagina and into her anus. We also decided that Mr. O'Donnell did not lack the capacity to form the specific intent to kill Ebony due to cocaine intoxication.

The evidence showed that Ebony Dorsey died in the very early morning hours of December 7, 2007. Her mother, Daniele Cattie, and the defendant had a relationship based on sex and drugs. They regularly engaged in intercourse, including anal sex, and used cocaine together. Mr. O'Donnell enjoyed pornography and liked to view scenes of anal intercourse over and over.

On December 6, 2007 the defendant asked that Ebony babysit his daughter, Kyra, in the apartment of his estranged wife, Tameika O'Donnell. When Ms. Cattie returned to her home in Ambler around midnight from her bartending job, defendant was there with six $20 bags of cocaine. She asked why Ebony and Kyra were not at her house, and Mr. O'Donnell explained he wanted Kyra to be in her own bed.

He and she split the cocaine. Ms. Cattie snorted hers, and defendant cooked and then smoked his. During the night they played backgammon and watched some pornography, but did not engage in any form of sexual intercourse. Several hours after they used up the cocaine, around 5:30 a.m., Ms. Cattie asked Mr. O'Donnell to pick up Ebony so she could go to school.

Ms. O'Donnell, who traveled frequently on business and was due to return home on December 7, 2007, explained she kept a computer in her apartment. It had a guest account she let relatives and visitors use. A forensic examination of that computer showed that it was used on and off from about 10 p.m. on the night of December 6 until 1:50 a.m. on December 7. During that time it was used for MySpace activity, chat and looking at celebrity photographs, activity typical of a teenager. No pornography was viewed during that time. Beginning at 5:39 a.m. on December 7, 2007 it was used to view pornography, including pictures of anal intercourse.

Defendant confessed that he killed Ebony Dorsey that morning in his wife's apartment, asserting a fit of rage after he supposedly discovered Ebony engaging in inappropriate behavior with Kyra. He claimed not to remem-

ber the killing, but said that he "went off", wrapped Ebony's pajamas around her neck, and found himself with his knees on her shoulders facing her. In his statement he told the police Kyra complained that her vagina hurt after the killing. By the time he spoke to the psychiatrist retained on his behalf he changed the story to have Kyra complaining of this before the killing.

Defendant put Kyra in the bath tub, dumped his clothing from a blue plastic container, stuffed Ebony's body inside, and took it outside near the dumpster. He gathered Ebony's belongings into her backpack, and added money to make it appear he paid for baby-sitting. He loaded that and Ebony's body into his car, threw the backpack into a dumpster at a gasoline station, and took Ebony to the home of his nephew, where he hid the container in a pile of leaves. What was a missing child investigation turned into a murder investigation when defendant's nephew found this unusual pile of leaves on his property while walking his dog.

The autopsy revealed splits in Ebony's anus and redness and abrasion of the back of her vulva consistent with penetration of both her anus and vagina with a cylindrical object. The medical examiner expressed the opinion that the use of an object was more likely than a penis, and based on that, and the lack of any foreign DNA inside Ebony, we conclude that an object was used to penetrate her. Bruising of her rectum on the right-hand side indicated there was blood circulation, so she was alive when her vagina and anus were penetrated. Death was due to blunt force trauma and strangulation, and the presence of fine perechial hemorrhages under the eyelids

indicated that strangulation stopped and resumed before she died. Scratches on defendant's hands consistent with Ebony's braces also indicated a struggle. Defendant's claim he just found himself with his knees on her shoulders, with her face up (supporting his denial of penetration from behind), is inconsistent with the abrasions of her jaw, showing she was pressed face down against a textured surface. The Caucasian hair was too small to test, and is of no moment because of the extensive involvement of white people after Ebony's body was found.

When the defendant gave his statement he volunteered that he wanted the people to know there was nothing sexual about what happened. He said this without being informed that anything sexual had taken place. He strangled Ebony with her pajamas, which he would not have had to remove to kill her. While the object used to penetrate Ebony was never found, this did not raise a reasonable doubt in our mind that defendant used one. Defendant's concern that people think nothing sexual occurred simply led him to dispose of this object in a different place, and not tell the police where he put it. Although others may theoretically have had access to Ms. O'Donnell's apartment, unknown DNA and a tissue with blood of an unknown person was found, none of this led us to doubt that Ebony's confessed killer, the defendant, engaged in deviate sexual intercourse with her using a foreign object, then strangled her with the pajamas he removed. A crime may be proven by wholly circumstantial evidence. *Commonwealth v. Andrulewicz,* 911 A.2d 162, 165 (Pa. Super. 2006), *allocatur denied,* 592 Pa. 778, 926 A.2d 972 (2007).

Defendant offered expert psychiatric testimony that, due to his cocaine use earlier in the day, he was incapable of forming the specific intent required to establish first-degree murder. We did not credit that testimony because (1) it was predicated on the assumption that defendant did not engage in involuntary sexual intercourse with Ebony, and (2) we found the testimony of the Commonwealth's expert credible and supported by the facts:

Defendant played backgammon, a game requiring concentration and strategy, throughout the evening. He drove a route from Ambler to Plymouth Meeting that required multiple stops and turns, showing dexterity and memory. He found the right key and let himself into the apartment. He navigated to a number of different pornographic web sites on the computer over the course of about 10 minutes.

After defendant killed Ebony he admittedly engaged in a complex series of steps to put his daughter in the tub, dump his clothing from a container, stuff Ebony's body into that container, take it to a place where he could load it into his car without being seen, and drive across the parking lot to that location. He added money to her backpack to suggest he paid Ebony for baby-sitting, and thus that she was alive when he left her. He disposed of the backpack in one place, a gasoline service station, and her body in another, his nephew's property. All this shows consciousness and the ability to plan before and after the killing. Defendant was working deliberately to cover up both the killing he admitted and the sexual assault he continues to deny.

The expert called by the Commonwealth expressed the opinion that temporary blackouts are unusual with cocaine ingestion, and inconsistent with defendant's conduct before and after the killing. The medical testimony, that strangulation started and stopped, and that it would have taken a minute or two of steady pressure for Ebony to lose consciousness, during which time defendant tied Ebony's pajama bottoms around her neck and knotted them twice, shows consciousness and intent to kill during the killing.

In *Commonwealth v. Brown,* 551 Pa. 465, 711 A.2d 444 (1998), the court held evidence that the 3-year-old victim's body was secreted in an elevator shaft of an abandoned housing project, with bruises and tears of his rectum consistent with penetration with a penis or a broom handle was sufficient to establish the specific intent required to find first-degree murder and the crime of involuntary deviate sexual intercourse. In *Commonwealth v. Pruitt,* 597 Pa. 307, 951 A.2d 307 (2008), *cert. denied,* 77 U.S.L.W. 3528 (U.S. March 23, 2009) the Supreme Court upheld a conviction of first-degree murder and the death penalty. The body of the 69-year-old victim was found in her home severely bruised with her mouth covered by a towel. The court held the trier of fact was justified in rejecting the claim that the defendant lacked the specific intent to kill due to cocaine ingestion because he admitted needing money for more crack, following the victim into her home, tying her up, taking off her clothes, then untying her, and starting to clean up after he took her money. This evidence was held sufficient to show he was capable of formulating a plan, acting deliberately in pursuit of it and taking steps to conceal

his actions, so he was capable of forming the required specific intent in spite of his cocaine use. Mr. O'Donnell's conduct was more complex.

The evidence was sufficient to support the verdicts of guilty of first-degree murder and involuntary deviate sexual intercourse. These verdicts were not against the weight of the evidence.