J-S63015-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRIST EUGENE HARSH, | |
| Appellant | No. 349 MDA 2014 |

Appeal from the Judgment of Sentence January 6, 2014
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0004709-2012

BEFORE:  BOWES, PANELLA, and PLATT,[*] JJ.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 15, 2014**

Christ Eugene Harsh appeals from the judgment of sentence of eighteen to forty-five years incarceration that the trial court imposed after a jury convicted Appellant of two counts each of involuntary deviate sexual intercourse and indecent assault, and one count each of aggravated indecent assault, unlawful conduct with a minor, corruption of a minor, and indecent exposure.  We affirm.

Appellant's convictions were premised upon his sexual abuse of K.S., the seven-year-old daughter of T.S., Appellant's live-in girlfriend.  The trial court summarized the evidence adduced in support of Appellant's convictions.

---

[*]  Retired Senior Judge assigned to the Superior Court.

In April of 2012, [T.S.] contacted the Northwest Regional Police Department of Lancaster County because her seven year old daughter, K.S., had been setting fires in her bedroom. On April 3, [T.S.] took K.S. to the police station to meet with Officer Harry Cleland who had offered to talk to her about fire safety. During the conversation, Officer Cleland sensed that K.S. had something she wanted to communicate to him privately, and asked [T.S.] to leave the room. Once they were alone, K.S. pointed to her vagina and told Officer Cleland that [T.S.]'s boyfriend, whom she referred to as "Daddy Gene," had touched her "down there." (N.T. Jury Trial Vol. 1, 104:7-13.)

Officer Cleland immediately relayed K.S.'s disclosure to [T.S.], and contacted Detective Gregory Wahl and Lancaster County Children and Youth Services. Before Detective Wahl arrived at the police station, K.S. asked to speak to Officer Cleland a second time. This time, K.S. told Officer Cleland that Defendant, Christ Eugene Harsh, took her into the bathroom of their home, pulled down her pants, and put his penis into her anus. K.S. also revealed that Defendant instructed her not to tell anyone about the incident.

On April 4, [T.S.] took K.S. to Lancaster General Hospital for a sexual assault examination which was conducted by nurse examiner Angela Mays. During the initial interview, K.S. told Ms. Mays that Defendant had "hurt her" and indicated that her genital area was sore and itchy. (N.T. Jury Trial Vol. 2, 171:2-11.) Ms. Mays completed a rape kit and collected several vaginal, rectal and oral samples from K.S. Ultimately, all of the samples tested negative for the presence of blood and seminal material.

On April 10, [T.S.] took K.S. to the Lancaster County Children's Alliance for a forensic interview and medical examination arranged by Detective Wahl. Mary Hayle conducted K.S.'s forensic interview. During the interview, and in subsequent testimony and statements, K.S. once again stated that Defendant pulled her pants down in the bathroom of their home and stuck his penis in her anus until he "made it drool." (N.T. Jury Trial Vol. 1, 83:20-84:11). K.S. also revealed that Defendant put his penis into her mouth and ejaculated while [T.S.] was at work. Further, K.S. disclosed that Defendant performed oral sex on her and inserted his fingers into her vagina in the bathroom and living room of their home. K.S.

stated that Defendant had oral and anal sex with her "a lot of times." (N.T. Jury Trial Vol. 1, 87:15-23.) Finally, K.S. disclosed that Defendant grabbed her hand, put it on his penis, and instructed her to "go up and down." (N.T. Jury Trial Vol. 1, 89:7-17.)

Trial Court Opinion, 4/10/14, at 1-3 (extraneous citations to record omitted).

Appellant filed a post-sentence motion after he received the above-described sentence. This appeal followed denial of that motion. Appellant presents these issues on appeal:

> I. Did not the court err in entering an order under 42 Pa.C.S. §5985 that the trial testimony of the minor complainant (KS) be taken under oath or affirmation in a room other than a courtroom and transmitted by a contemporaneous alternative method?
>
> II. Did not the court err in granting the Commonwealth's oral motion *in limine* to exclude defendant's presentation of evidence from defendant's mother which would have contradicted testimony that the Commonwealth elicited from the minor complainant's mother when the court incorrectly concluded that defendant had not satisfied the prerequisites under Pa.R.E. 613(b) governing the proof of prior inconsistent statements through extrinsic evidence?

Appellant's brief at 5.

As to Appellant's first position, we observe that, "The manner and circumstances under which a child victim of sexual assault is permitted to testify outside the presence of a defendant is governed by 42 Pa.C.S.A. § 5985, Testimony by contemporaneous alternative method."[1]

_____

[1] That section provides for an alternative method by which a child victim can testify and provides:

*(Footnote Continued Next Page)*

**(a) Contemporaneous alternative method.--**Subject to subsection (a.1), in any prosecution or adjudication involving a child victim or a child material witness, the court may order that the testimony of the child victim or child material witness be taken under oath or affirmation in a room other than the courtroom and transmitted by a contemporaneous alternative method. Only the attorneys for the defendant and for the Commonwealth, the court reporter, the judge, persons necessary to operate the equipment and any person whose presence would contribute to the welfare and well-being of the child victim or child material witness, including persons designated under section 5983 (relating to rights and services), may be present in the room with the child during his testimony. The court shall permit the defendant to observe and hear the testimony of the child victim or child material witness but shall ensure that the child cannot hear or see the defendant. The court shall make certain that the defendant and defense counsel have adequate opportunity to communicate for the purposes of providing an effective defense. Examination and cross-examination of the child victim or child material witness shall proceed in the same manner as normally permitted.

**(a.1) Determination.--**Before the court orders the child victim or the child material witness to testify by a contemporaneous alternative method, the court must determine, based on evidence presented to it, that testifying either in an open forum in the presence and full view of the finder of fact or in the defendant's presence will result in the child victim or child material witness suffering serious emotional distress that would substantially impair the child victim's or child material witness's ability to reasonably communicate. In making this determination, the court may do all of the following:

> (1) Observe and question the child victim or child material witness, either inside or outside the courtroom.

> (2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child victim or child material witness in a medical or therapeutic setting.

*Commonwealth v. Charlton*, 902 A.2d 554, 558 (Pa.Super. 2006). We give deference to the trial court's decision to permit a child to testify by alternative method. *Id*. Herein, the Commonwealth petitioned to present K.S.'s testimony by this alternative method, and the trial court conducted the appropriate hearing. Based upon the child's actions at the preliminary hearing, where she was too terrified of Appellant to speak, an *in camera* interview, and the testimony of K.S.'s counselor, the trial court granted the request. We affirm the trial court's decision to permit the victim to testify outside of Appellant's presence on the basis of its April 10, 2014 opinion at pages four through six.

Appellant's second position concerns the trial court's refusal to allow him to present extrinsic evidence of a purported verbal statement that K.S.'s mother made to Appellant's mother. Appellant suggests that the statement was admissible under Pa.R.E. 613(b), which provides:

> **(b) Extrinsic Evidence of a Witness's Prior Inconsistent Statement.** Unless the interests of justice otherwise require, extrinsic evidence of a witness's prior inconsistent statement is admissible only if, during the examination of the witness,
>
> > (1) the statement, if written, is shown to, or if not written, its contents are disclosed to, the witness;
>
> > (2) the witness is given an opportunity to explain or deny the making of the statement; and

*(Footnote Continued)* ────────

42 Pa.C.S. § 5985.

> (3) an adverse party is given an opportunity to question the witness.

Pa.R.E. 613(b).

Initially, we note that, "Our standard of review for a trial court's evidentiary rulings is narrow, as the admissibility of evidence is within the discretion of the trial court and will be reversed only if the trial court has abused its discretion." ***Commonwealth v. Melvin***, 2014 WL 4100200, 24 (Pa.Super. 2014). The present issue concerns Appellant's ability to impeach T.S. On cross-examination, she was asked the following questions:

> Q Had there ever been any other accusations while you lived at 114 Colebrook Road that somebody else, besides the defendant, may have had sexual relations or sexual misconduct with [K.S.]?
>
> A No.
>
> Q Never? Okay. So it was never alleged that Tuan or Tim had done anything sexually inappropriate with [K.S.]?
>
> A No.

N.T. Trial Vol. 1, 9/30/13, at 58.

During presentation of his defense, Appellant stated that he intended to call his mother, Donna Lee Harsh, as a witness. Appellant proffered that T.S. told Ms. Harsh that K.S. made allegations of child abuse against T.S.'s brother, Tuan a/k/a Tim. The Commonwealth objected on the basis that Appellant had not confronted T.S. with making that statement to Ms. Harsh and had, concomitantly, failed to give her an opportunity to deny making it, or, if T.S. did make the remark, to offer an explanation for its utterance.

The trial court sustained the objection[2] and ruled that Appellant failed to satisfy the mandates of Rule 613 in that he never asked T.S. if she told Ms. Harsh that K.S. leveled abuse allegations against Tuan/Tim.

This ruling is unassailable. Appellant never asked T.S. whether she made any statement to Ms. Harsh about other sex abuse allegations. The statement was not disclosed to the witness at any point during cross-examination. T.S. never had the ability to deny making that statement, or, if she did, to explain why she made it. Thus, the first and second aspects of the Rule were not satisfied, and the trial court correctly found that the proposed proof of the alleged prior statement was inadmissible.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/15/2014</u>

---

[2] There was no motion *in limine* at issue, as suggested by Appellant's statement of the issue. Rather, there was a Commonwealth objection when Appellant proposed to present Ms. Harsh's testimony, and the trial court sustained the objection.

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA            :
                                                                :
                                v.                              :            No. 4709-2012
                                                                :
CHRIST EUGENE HARSH                        :

OPINION

BY: WRIGHT, J.                                                            April 10, 2014

This Opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate

Procedure. Defendant, Christ Eugene Harsh, claims that this Court erred in permitting the

victim's testimony to be presented via contemporaneous alternative method and by excluding the

testimony of his mother, Donna Lee Harsh. A review of the record and applicable law

demonstrates that Defendant's claims lack merit and, therefore, his appeal should be dismissed.

BACKGROUND

In April of 2012, Tara Shenk contacted the Northwest Regional Police Department of

Lancaster County because her seven year old daughter, K.S., had been setting fires in her

bedroom. (N.T. Jury Trial Vol. 1, 51:18-25.) On April 3, Ms. Shenk took K.S. to the police

station to meet with Officer Harry Cleland who had offered to talk to her about fire safety. (N.T.

Jury Trial Vol. 1, 52:21 – 53:2; 99:23 – 100:10.) During the conversation, Officer Cleland

sensed that K.S. had something she wanted to communicate to him privately, and asked Ms.

Shenk to leave the room. (N.T. Jury Trial Vol. 1, 102:7-19.) Once they were alone, K.S. pointed

to her vagina and told Officer Cleland that Ms. Shenk's boyfriend, whom she referred to as

"Daddy Gene," had touched her "down there." (N.T. Jury Trial Vol. 1, 104:7-13.)

Officer Cleland immediately relayed K.S.'s disclosure to Ms. Shenk, and contacted Detective Gregory Wahl and Lancaster County Children and Youth Services. (N.T. Jury Trial Vol. 1, 105:4-21.) Before Detective Wahl arrived at the police station, K.S. asked to speak to Officer Cleland a second time. (N.T. Jury Trial Vol. 1, 106:20-22.) This time, K.S. told Officer Cleland that Defendant, Christ Eugene Harsh, took her into the bathroom of their home, pulled down her pants, and put his penis into her anus. (N.T. Jury Trial Vol. 1, 107:2-7.) K.S. also revealed that Defendant instructed her not to tell anyone about the incident. (N.T. Jury Trial Vol. 1, 107:8-11.)

On April 4, Ms. Shenk took K.S. to Lancaster General Hospital for a sexual assault examination which was conducted by nurse examiner Angela Mays. (N.T. Jury Trial Vol. 2, 170:11 – 171:2.) During the initial interview, K.S. told Ms. Mays that Defendant had "hurt her" and indicated that her genital area was sore and itchy. (N.T. Jury Trial Vol. 2, 171:2-11.) Ms. Mays completed a rape kit and collected several vaginal, rectal and oral samples from K.S. (N.T. Jury Trial Vol. 2, 178:18-23.) Ultimately, all of the samples tested negative for the presence of blood and seminal material. (N.T. Jury Trial Vol. 2, 161:2 – 163:4.)

On April 10, Ms. Shenk took K.S. to the Lancaster County Children's Alliance for a forensic interview and medical examination arranged by Detective Wahl. (N.T. Jury Trial Vol. 1, 117:24 – 118:2.) Mary Hayle conducted K.S.'s forensic interview. (N.T. Jury Trial Vol. 1, 117:24 – 118:2.) During the interview, and in subsequent testimony and statements, K.S. once again stated that Defendant pulled her pants down in the bathroom of their home and stuck his penis in her anus until he "made it drool." (N.T. Jury Trial Vol. 1, 83:20 – 84:11.) K.S. also revealed that Defendant put his penis into her mouth and ejaculated while Ms. Shenk was at work. (N.T. Jury Trial Vol. 1, 84:19 – 85:23.) Further, K.S. disclosed that Defendant performed

2

oral sex on her and inserted his fingers into her vagina in the bathroom and living room of their home. (N.T. Jury Trial Vol. 1, 86:14 – 88:25.) K.S. stated that Defendant had oral and anal sex with her "a lot of times." (N.T. Jury Trial Vol. 1, 87:15-23.) Finally, K.S. disclosed that Defendant grabbed her hand, put it on his penis, and instructed her to "go up and down." (N.T. Jury Trial Vol. 1, 89:7-17.)

After the forensic interview, Julie Stover, a nurse practitioner and an expert in child sexual abuse, performed a physical examination of K.S. (N.T. Jury Trial Vol. 2, 183:19-23.) While the results of K.S.'s examination were normal, Ms. Stover cautioned that the mucosal tissue lining the vagina and rectum typically heals within seventy-two hours of injury, and that visible scarring is only observed in 5% of cases. (N.T. Jury Trial Vol. 2, 192:2-24.)

As a result of K.S.'s statements, in May of 2012, Detective Wahl charged Defendant with two counts of Involuntary Deviate Sexual Intercourse with a Child,[1] one count of Aggravated Indecent Assault,[2] one count of Unlawful Conduct with a Minor,[3] two counts of Indecent Assault,[4] one count of Corruption of Minors,[5] and one count of Indecent Exposure.[6] Following a two day jury trial, on October 2, 2013, Defendant was convicted of all charges and a Pre-Sentence Investigation was ordered. (N.T. Jury Trial Vol. 3, 287:18 – 291:7.) On January 6, 2014, Defendant was sentenced to a total aggregate of 18 – 45 years of incarceration. (N.T. Sentencing Hearing, 18:12 – 19:19.)

On January 16, 2014, Defendant filed a Post Sentence Motion comprised of a Motion for Judgment of Acquittal, Motion for New Trial and Motion to Modify Sentence, all of which were

---

[1] 18 P.S. § 3123(b).
[2] 18 Pa.C.S.A. § 3125(b).
[3] 18 Pa.C.S.A. § 6318(a)(1).
[4] 18 Pa.C.S.A. § 3126(a)(7).
[5] 18 Pa.C.S.A. § 6301(a)(1)(ii).
[6] 18 P.S. § 3127.

3

denied on January 23, 2014. On February 21, 2014, Defendant filed a timely Notice of Appeal to the Superior Court, and on March 11, 2014, Defendant submitted his Concise Statement of Errors Complained of on Appeal. In his Statement, Defendant claims that this Court erred in permitting K.S.'s testimony to be presented via contemporaneous alternative method and by excluding the testimony of his mother, Donna Lee Harsh.

## DISCUSSION

Defendant's first claim is that the Court erred in permitting K.S.'s testimony to be taken under oath outside of the courtroom and transmitted by contemporaneous alternative method. On July 29, 2013, the Commonwealth filed a Motion asking the Court to permit K.S. to testify at trial by contemporaneous alternative method. Accordingly, on August 16, 2013, a Hearing was conducted on the Motion. As a part of the Hearing, K.S., who was then nine years old, was questioned *in camera* about her ability to testify in Defendant's presence. While K.S. stated that she thought she could testify with Defendant in the courtroom, she appeared uncomfortable and often did not provide verbal responses to the questions she was asked. (N.T. Tender Years Hearing, 5:13 – 6:2.)

Following the *in camera* interview, Heidi Getsy, K.S.'s counselor, stated that K.S. frequently indicated that she was afraid Defendant would hurt her if she testified while he was in the courtroom. (N.T. Tender Years Hearing, 12:4 – 13:2.) Ms. Getsy also stated that she believed testifying in Defendant's presence would cause K.S. serious emotional distress and impair her ability to communicate reasonably. (N.T. Tender Years Hearing, 15:3-12.) Finally, Ms. Shenk, Detective Wahl, and Rodney Stoltzfus, K.S.'s biological father, all stated that at the Preliminary Hearing, despite initially indicating she was capable of testifying, K.S. became

4

terrified when she saw Defendant and was unable to speak about the sexual abuse. (N.T. Tender Years Hearing, 17:23 –18:9; 22:7-16; 24:19 – 25:1.)

The manner under which a child victim may testify outside of the presence of a defendant is governed by 42 Pa.C.S.A. § 5985, "Testimony by contemporaneous alternative method." Section 5985(a) provides that "[i]n any prosecution or adjudication involving a child victim or a child material witness, the court may order that the testimony of the child victim or child material witness be taken under oath or affirmation in a room other than the courtroom and transmitted by a contemporaneous alternative method." Before permitting a child to testify via contemporaneous alternative method, a court must find that "testifying either in an open forum in the presence and full view of the finder of fact or in the defendant's presence will result in the child victim or child material witness suffering serious emotional distress that would substantially impair the child victim's or child material witness's ability to reasonably communicate." 42 Pa.C.S.A. § 5985(a.1). In making this determination, a court is permitted to: (1) Observe and question the child victim or child material witness, either inside or outside of the courtroom; and (2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child victim or child material witness in a medical or therapeutic setting." 42 Pa.C.S.A. § 5985(a.1)(1-2).

After complying with the procedures outlined in Section 5985, the Court found numerous reasons to permit K.S. to testify via contemporaneous alternative method. Despite previously indicating that she could testify in Defendant's presence, at the Preliminary Hearing K.S. became so terrified upon seeing Defendant that she was unable to speak. Additionally, Ms. Getsy revealed that K.S. frequently expressed trepidation about seeing Defendant in the courtroom and indicated that she was afraid he would physically harm her. Moreover, Ms. Getsy stated that

5

testifying in Defendant's presence would cause K.S. serious emotional distress and hamper her ability to communicate. Finally, my own observations of K.S.'s *in camera* interview underscored my belief that she would be unable to effectively communicate in Defendant's presence. Therefore, the Court had ample reason for granting the Commonwealth's Motion and permitting K.S. to testify by contemporaneous alternative method.

Defendant's second claim is that the Court erred in granting the Commonwealth's objection to the testimony of Defendant's mother, Donna Lee Harsh. At the conclusion of the Commonwealth's case in chief, Defendant's attorney indicated his intention to call Ms. Harsh as a rebuttal witness. (N.T. Jury Trial Vol. 2, 214:21-23.) Specifically, defense counsel wanted Ms. Harsh to testify that Ms. Shenk told her there were allegations that K.S.'s uncle, Tuan Pham, had sexually abused her. (N.T. Jury Trial Vol. 2, 214:23 – 215:9.) The Commonwealth objected to the proposed testimony claiming that defense counsel did not lay the proper foundation to impeach Ms. Shenk with extrinsic evidence of a prior inconsistent statement. (N.T. Jury Trial Vol. 2, 215:10-19.)

> Pennsylvania Rule of Evidence 613(b) provides:
>
> Unless the interests of justice otherwise require, extrinsic evidence of a witness's prior inconsistent statement is admissible only if, during the examination of the witness,
>
> (1) The statement, if written, is shown to, or if not written, its contents are disclosed to, the witness;
>
> (2) The witness is given an opportunity to explain or deny the making of the statement; and
>
> (3) An adverse party is given an opportunity to question the witness.

During his cross-examination, defense counsel and Ms. Shenk engaged in the following relevant exchange:

> Q:   Had there ever been any other accusations while you lived at 114 Colebrook Road that somebody else, besides the Defendant, may have had sexual relations or sexual misconduct with [K.S.]?
>
> A:   No.
>
> Q:   Never? Okay. So it was never alleged that Tuan or Tim had done anything sexually inappropriate with [K.S.]?
>
> A:   No.

(N.T. Jury Trial Vol. 1, 58:6-14.)

Considering the foregoing, defense counsel did not lay the proper foundation to impeach Ms. Shenk with extrinsic evidence of a prior inconsistent statement. While defense counsel asked generally whether there were ever allegations that K.S.'s uncle sexually abused her, he never confronted Ms. Shenk with the statements she allegedly made to Ms. Harsh. Accordingly, Ms. Shenk was deprived of the opportunity to explain or deny making these specific comments. Since defense counsel did not comply with the requirements of Pennsylvania Rule of Evidence 613(b), the Court properly sustained the Commonwealth's objection and excluded Ms. Harsh's proposed testimony.

## CONCLUSION

Since Defendant's claims of error lack merit, this Court respectfully quests that Defendant's appeal be dismissed.

Accordingly, I enter the following:

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA      :

             v.                       :          No. 4709-2012

CHRIST EUGENE HARSH               :

## ORDER

AND NOW, this __10__ day of April, 2014, the Court hereby submits this Opinion

pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

**I certify this document to be filed
In the Lancaster County Office of
the Clerk of the Courts.**

Joshua G. Parsons
Clerk of the Courts
Attest:

BY THE COURT:

_____
JEFFERY D. WRIGHT
JUDGE

Copies to:
     James M. Reeder, Assistant District Attorney
     James J. Karl, Chief Public Defender