J-S12004-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID SCOTT TEETER | |
| Appellant | No. 2082 EDA 2015 |

Appeal from the Judgment of Sentence April 16, 2015
In the Court of Common Pleas of Wayne County
Criminal Division at No(s): CP-64-CR-0000217-2014

BEFORE:  MUNDY, J., OLSON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED FEBRUARY 12, 2016**

Appellant, David Scott Teeter, appeals from the aggregate judgment of sentence of 12 to 26 years' imprisonment, imposed by the trial court on April 16, 2015, after a jury convicted Appellant of two counts of rape and one count of endangering the welfare of a child.[1]  After careful review, we affirm.

The notes of testimony from the certified record reveal the following. A.H., who was born in January 1991, testified that Appellant was her step-father.  N.T., 1/12/15, at 3.  A.H. stated that Appellant has "been in my life since I [was] 2 years old.  He's been the one I thought was dad."  *Id.* at 54. A.H. testified that when she was seven or eight years old, Appellant began

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3121(a), 3121(c) and 4304, respectively.

raping her. *Id.* at 4. A.H. testified that she "just laid there and held my teddy bear." *Id.* at 5. She said that Appellant told her "it was normal to do it with my father." *Id.* at 5, 10, 15, 18. Appellant also told her "to keep [her] mouth shut or [her] mom and sister [were not going to] be here anymore." *Id.* at 11, 23. A.H. testified that she was afraid of Appellant and did not tell her mother because Appellant had "gotten abusive before" and she did not think her mother would believe her. *Id.* at 14-15, 42-43. Appellant raped A.H. continuously for ten years, from the time she was eight until she was 18. *Id.* at 24. A.H. testified, "[i]t's impacted my life in every way. I can't keep a relationship, can't keep a job, I have a horrible relationship with my mother now. I'm just not the same." *Id.*

A.H.'s step-sister, S.T., born in October 2000, testified to being Appellant's daughter. N.T., 1/13/15 (victim/defendant), at 4.[2] S.T. testified that when she was nine years old, Appellant left her alone at a gas station for an hour. *Id.* at 5, 9. She stated that when Appellant returned, and they were driving home, Appellant "would reach into my pants and … put his fingers inside" her vagina. *Id.* at 9. Appellant, who weighed over 300

---

[2] The record contains two transcripts dated January 13, 2015, and labeled "Jury Trial Volume II." They are distinguished by their additional and respective labels of "victim/defendant" and "remaining testimony."

pounds at the time[3], told S.T. "that if [she] told anyone he was going to hurt [her] and whoever [she] told." *Id.* at 10, 23. S.T. did not tell her mother because she "was afraid he was going to hurt me and her." *Id.* at 11, 27, 30. Appellant continued to molest S.T. on approximately eight more occasions. *Id.* Eventually, S.T. began cutting her arms, and when S.T.'s friends saw the cuts, they went to their school office seeking help. *Id.* S.T. then told school officials about Appellant's actions, and the school officials contacted police. *Id.* at 12. S.T. went with her mother to the State Police Barracks where she was interviewed regarding the incidents with Appellant. *Id.* at 13. S.T. testified, "It changed who I am. I'm afraid to actually go out in public because people know. Having to deal with this I've gained weight really fast." *Id.*

Pennsylvania State Trooper John Decker testified to being contacted by Children and Youth Services regarding allegations of sexual abuse of S.T. Trooper Decker interviewed S.T. and heard her testimony at trial; he stated that S.T.'s trial testimony was "substantially the same" as what S.T. told him. N.T., 1/13/15 (remaining testimony), at 4.

Clinical social worker Ann Cook testified to "continuously dealing with victims of sexual abuse" since obtaining her license in 2001. *Id.* at 14-15.

_____

[3] At trial, Appellant testified he had weighed as much as 350 pounds, but had lost weight, and at the time of trial was six feet tall and weighed 225 pounds. N.T., 1/13/15 (victim/defendant), at 78.

Ms. Cook stated that she did not know Appellant, and did not know A.H. or S.T. *Id.* at 17. She said her purpose in testifying was to "provide testimony about victim behavior." *Id.* Thereafter, the Commonwealth offered her as an "expert in the area of victim responses to sexual abuse, the impact of sexual abuse, and the dynamics of sexual abuse on children." *Id.* at 18. Appellant did not oppose Ms. Cook's expert qualification. *Id.* Ms. Cook testified that children who are victims of sexual abuse by a family member are often "afraid that no one is going to believe them." *Id.* at 25. Also, with family-based abuse, "disclosures tend to be more delayed than immediate." *Id.* at 27. Ms. Cook testified that reactions of victims to child sexual abuse differ, but victims may exhibit both aggression and passivity, and engage in substance abuse and self-harm, including cutting. *Id.* at 31-32.

Appellant testified in his defense. He stated that he "came out as transgender in 2012," and his "mind is female, and unfortunately [his] body is male." N.T., 1/13/15 (victim/defendant), at 46. Appellant said he "[m]ost definitely [did] not" commit the crimes with which he was charged. *Id.* at 49. With regard to the molestation of S.T., Appellant said, "[n]ot only did [I] not do it, but it's physically impossible [because] I'm wearing a seat belt, there's no way I can reach that passenger seat; if I can it's just the edge of the seat." *Id.* at 79. With regard to the rapes of A.H. over a ten year period, Appellant testified that he "never had unsupervised contact with

- 4 -

[A.H.]."[4] *Id.* at 86.  Appellant explained the charges against him, stating, "[the girls'] mother's been slighted, she's not getting her child support on time like she wants.  She's vindictive and she uses the children as a weapon." *Id.* at 90.  Appellant described the charges against him as "bogus lies." *Id.*  On cross-examination, Appellant testified that he had been transgender "all his life," but also stated that he married two women, and had three children.  *Id.* at 99-100.  In addition, Appellant averred that he had "been drugged eight days in a van in a cube to be put on trial for charges I never did." *Id.* at 105.

Appellant called Nicholas Dzwonczyk to testify.  Mr. Dzwonczyk testified to knowing Appellant for ten years, and stated that Appellant "was very well respected" in the community, and had a reputation for being peaceful and law abiding.  N.T., 1/13/15 (remaining testimony), at 43-44.

Finally, the Commonwealth called Dawn Teeter on rebuttal.  Mrs. Teeter testified that Appellant was her husband with whom she has two biological daughters, including S.T.  *Id.* at 52.  Mrs. Teeter also testified that there were times Appellant was alone with both S.T. and A.H.  *Id.* at 53.  Mrs. Teeter was aware that Appellant was transgender.  *Id.*  Mrs. Teeter

_____

[4] On cross-examination, Appellant conceded he was alone with A.H. when he took her on "road calls" in his work truck, and stated "I stand corrected." N.T., 1/13/15 (victim/defendant), at 94.

denied telling her daughters to make allegations against Appellant. *Id.* at 56.

Appellant was charged with 13 criminal counts, to wit: rape (complainant less than 13), rape of a child, rape by threat of forcible compulsion, involuntary deviate sexual intercourse (threat of forcible compulsion), aggravated indecent assault (eight counts), and endangering the welfare of a child. Appellant's trial commenced on January 12, 2015, at the conclusion of which, on January 14, 2015, the jury rendered its guilty verdicts to the first two rape charges and the charge of endangering the welfare of a child. On April 16, 2015, the trial court sentenced Appellant to 12 to 26 years' imprisonment. Appellant filed a timely post-trial motion on April 27, 2015[5], and, with the exception of granting Appellant's request for transcription of the trial notes of testimony, the trial court on June 12, 2015, denied the post-trial motion. Appellant filed this timely appeal on July 9, 2015.[6]

On appeal, Appellant presents two questions for our review.

---

[5] The tenth day for filing a post-trial motion fell on Sunday, April 26, 2015, therefore, Appellant's post-trial motion filed on Monday, April 27, 2015 was timely. **See** 1 Pa.C.S.A. § 1908 (providing that when the last day of a calculated period of time falls on a Saturday or Sunday, such day shall be omitted from the computation).

[6] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

1. Whether the Commonwealth sustained its burden of proof beyond a reasonable doubt relative to the charges for which [Appellant] was convicted?

2. Whether the sentence imposed by the [t]rial [c]ourt was excessive and utterly harsh and oppressive?

Appellant's Brief at 6.

In advancing his first issue, Appellant assails the credibility of his victims, and states as follows.

The young girls testified on a very general and superficial basis, insufficient for a jury to conclude beyond a reasonable doubt that [Appellant] was guilty of the two Rape charges or the Endangerment charge.
[Appellant's] thrust is that the testimony of his female relatives is inadequate to support such convictions.

Appellant's Brief at 9. Appellant additionally asserts that the "jury's guilty verdict on [the rape] counts is based upon extremely sparse testimony." *Id.* at 12-13. Appellant further focuses on the semantics of the testimony of both A.H. and S.T. in arguing that his convictions should be vacated. *Id.* at 10-22.

We begin our analysis by recognizing that there is sufficient evidence to sustain a conviction when the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to enable the fact-finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. ***Commonwealth v. Markman***,

916 A.2d 586, 597 (Pa. 2007). Furthermore, we note that the entire trial record is evaluated and all evidence received against the defendant is considered, being cognizant that the trier of fact is free to believe all, part, or none of the evidence. *Id.*

In this case, Appellant was convicted of two counts of rape, which is codified as follows.

> **(a) Offense defined.--**A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant:
>
> (1) By forcible compulsion.
>
> (2) By threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.
>
> (3) Who is unconscious or where the person knows that the complainant is unaware that the sexual intercourse is occurring.
>
> (4) Where the person has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of the complainant, drugs, intoxicants or other means for the purpose of preventing resistance.
>
> (5) Who suffers from a mental disability which renders the complainant incapable of consent.
>
> …
>
> **(c) Rape of a child.--**A person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is less than 13 years of age.

18 Pa.C.S.A. § 3121(a), (c).

Appellant was also convicted of endangering the welfare of a child, which is defined by statute as follows.

> A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S.A. § 4304(a)(1).

We have carefully reviewed the notes of testimony from Appellant's trial in their entirety, and find Appellant's argument regarding the evidence to be unavailing. With regard to Appellant's rape convictions, "[t]his Court has long-recognized that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses. If the factfinder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict." *Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa. Super. 2006) (internal quotation marks and citations omitted), *appeal denied*, 911A.2d 933 (Pa. 2006).

As to Appellant's conviction for endangering the welfare of a child,

> [t]he *mens rea* required for [endangering the welfare of a child] is a knowing violation of the accused's duty of care to the minor-victim. More precisely, the Commonwealth must prove that: 1) the accused is aware of his or her duty to protect the child; 2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and 3) the accused has either

- 9 -

failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Commonwealth v. Martir*, 712 A.2d 327, 328-329 (Pa. Super. 1998) (citations omitted).

Here, the jury's guilty verdicts indicate that the jurors found the testimony of A.H. and S.T. to be credible, and chose not to believe Appellant's testimony. The trial court, citing the testimony of A.H., properly concluded "the jury found [A.H.'s] testimony credible, which indicated that [Appellant] was guilty of raping his step-daughter." Trial Court Opinion, 8/11/15, at 3-4. Similarly, the trial court, citing the testimony of S.T., properly concluded, "the jury found [S.T.'s] testimony credible, which indicated that [Appellant] was guilty of endangering the welfare of his daughter." *Id.* at 5-6. Accordingly, the Commonwealth presented sufficient evidence to find Appellant guilty of the aforementioned charges.

In his second issue, Appellant contends that his "sentence is highly excessive regardless of the charges and the impact such crimes have on victims." Appellant's Brief at 24. Within the two pages in his brief devoted to this argument, Appellant regurgitates rudimentary sentencing law and generally asserts that the trial court abused its discretion by imposing a sentence that "is patently excessive." *Id.* at 25.

At the outset, we note that Appellant's argument pertains to the discretionary aspects of his sentence. "There is no absolute right to appeal

when challenging the discretionary aspect of a sentence." ***Commonwealth v. Tobin***, 89 A.3d 663, 666 (Pa. Super. 2014) (citation omitted). When an appellant makes an argument pertaining to the discretionary aspects of the sentence, this Court considers such an argument to be a petition for permission to appeal. ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1265 (Pa. Super. 2014) (*en banc*) (citation omitted), *appeal denied*, 104 A.3d 1 (Pa. 2014). "[A]n [a]ppeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code." ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1042 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted).

Prior to reaching the merits of a discretionary aspects of sentencing issue, this Court is required to conduct a four-part analysis to determine whether a petition for permission to appeal should be granted. ***Commonwealth v. Trinidad***, 96 A.3d 1031, 1039 (Pa. Super. 2014) (citation omitted), *appeal denied*, 99 A.3d 925 (Pa. 2014). Specifically, we must determine the following.

> (1) [W]hether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 [Pa.C.S.A.] § 9781(b).

*Id.* (citation omitted).

Instantly, Appellant filed a timely motion for reconsideration of sentence and notice of appeal. Also, Appellant's brief includes a Rule 2119(f) statement. Appellant's Brief at 23. We therefore proceed to address whether Appellant has raised a substantial question for our review.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Edwards*, 71 A.3d 323, 330 (Pa. Super. 2013) (citations omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citations omitted).

As noted above, Appellant's sentencing argument consists of a general assertion that his sentence is excessive. Other than referencing the "at least 12 years, with a maximum of 26 years," imprisonment to which he was sentenced, Appellant does not elaborate or otherwise explain **how** his sentence is excessive. It is well-settled that bald allegations of excessive sentencing do not raise a substantial question to warrant appellate review. *Commonwealth v. Mouzon*, 812 A.2d 617, 627 (Pa. 2002). Accordingly, we decline to consider Appellant's sentencing issue further.

In sum, our thorough review reveals that the evidentiary and sentencing issues Appellant has raised on appeal do not warrant relief. We therefore affirm the April 16, 2015 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/2016