J. S55021/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
RICHARD BRYANT, :
:
Appellant : No.2226 EDA 2015

Appeal from the Judgment of Sentence entered June 30, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0009955-2012

BEFORE: LAZARUS, DUBOW, AND JENKINS, JJ.

MEMORANDUM BY DUBOW, J.: **FILED NOVEMBER 07, 2016**

Appellant appeals from the Judgment of Sentence entered on June 30, 2015, in the Court of Common Pleas of Philadelphia County after he was convicted by a jury of Rape of a Child and related offenses in connection with the sexual abuse of his girlfriend's niece. After careful review, we affirm.

The relevant facts, as gleaned from the certified record, are as follows. When AB (d/o/b 11/97), the complainant in this case, was between three and five years old, she and her younger brother lived with their grandmother while their mother was incarcerated. The children also spent nights and weekends at the home of AB's paternal aunt and Appellant, the aunt's then-paramour, whom the children referred to as "Uncle Richard." AB's aunt lived in two different houses during the relevant period. After AB's mother was

released from prison in January 2002, the children began to live with her again but they still frequently spent time with their aunt and Appellant.

On one occasion when the victim was between the ages of six and eight years old, Appellant digitally penetrated AB's vagina after kissing her. On a subsequent occasion within the same time frame, after bathing her, kissing her and removing her underwear, Appellant partially inserted his penis into AB's vagina. AB was able to wriggle away, and Appellant left the room. AB did not tell anyone what had happened after either incident.

In February 2004, after giving AB a bath, AB's mother noticed that AB was fidgety and scratching between her legs because she was uncomfortable. A subsequent physical examination at the Children's Hospital of Philadelphia ("CHOP") revealed that AB had "irritation of the genital structures" and a "notch" in her hymen, which indicated that her vagina may have been penetrated at one time. *See* N.T., 1/29/15, at 40, 46-53. AB's mother repeatedly questioned AB and spoke with a social worker and a police officer at the hospital. Because AB would not say that anyone or anything had penetrated her, no official Department of Human Services ("DHS") or police investigation ensued. *See* N.T., 1/30/15, at 128-133.

In March 2012, when she was fourteen years old, AB suffered a mental health crisis at school. It was then that she told her mother that Appellant had sexually assaulted her when she was younger. Two weeks later, after

AB had been released from a mental health facility, AB and her mother reported the crimes to the Philadelphia Police Department's Special Victim Unit. AB also met with a social worker from the DHS Children and Youth Division of the City of Philadelphia and recounted the two incidents.[1]

Appellant was arrested in April 2012 and charged with, *inter alia*, Rape of a Child, Aggravated Indecent Assault, Endangering the Welfare of Children, Corruption of Minors, and Indecent Assault of a person less than 13 years of Age.[2]

A jury trial proceeded over four days in January and February 2015. The Commonwealth presented testimony from AB, AB's mother, medical expert Dr. Philip Scribano, DHS social worker Margaret Henderson, Philadelphia Police Officer Reginald Green, and SVU Detective Linda Blowes. AB's aunt and Appellant himself testified for the defense. The court admitted police reports, CHOP medical records from AB's examination in 2004, DHS reports, and the transcript from Appellant's preliminary hearing.

---

[1] DHS investigated and in July 2012 determined that, because there was no current safety threat to AB, the case was "unfounded." *See* N.T., 1/30/15, at 34-37.

[2] 18 Pa.C.S. § 3121(c); 18 Pa.C.S. § 3125(b); 18 Pa.C.S. § 4304; 18 Pa. C.S.§ 6301; and 18 Pa.C.S. § 3126(a)(7), respectively.

The jury found Appellant guilty of the above charges. After receiving a pre-sentence report and SOAB assessment,[3] the court sentenced Appellant to a term of seventeen to thirty-four years' incarceration. Pursuant to SORNA,[4] Appellant is required to register as a sex offender for life.

After the denial of his Post-Sentence Motion, Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues:

1. Was the evidence presented by the Commonwealth at trial sufficient as a matter of law to sustain the guilty verdict?

2. Whether the trial court erred in preventing defense counsel from cross-examining Commonwealth witness, the Complainant's mother, with evidence tending to show motive to fabricate the allegations against [ ] Appellant?

Appellant's Brief at 6.

Appellant first challenges the sufficiency of the evidence. However, he does not argue which element of which conviction the Commonwealth did not support with sufficient evidence. Rather, he avers that "the Commonwealth offered no corroboration of any kind to render the flawed word of the Complainant true," and the "prosecution's evidence was so rife with irreconcilable contradictions and inconsistencies that the verdict could only have been reached through surmise and conjecture." Appellant's Brief

---

[3] The Sexual Offenders Assessment Board found Appellant not to be a sexually violent predator.

[4] Sexual Offender Registration and Notification Act, 42 Pa.C.S. §§ 9799.10-9799.41.

at 11-13, 18, citing **Commonwealth v. Kakaria**, 625 A.2d 1167 (Pa. 1993) and **Commonwealth v. Farquharson**, 354 A.2d 545 (Pa. 1976).

Evidentiary sufficiency is a question of law; thus, our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Diamond**, 83 A.3d 119, 126 (Pa. 2013). In determining whether the evidence was sufficient to support a verdict, we view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the Commonwealth as the verdict winner. **Commonwealth v. Watley**, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*). Furthermore,

> Evidence will be deemed sufficient to support the verdict when it establishes each element of the crime charged[,] and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty, and may sustain its burden by means of wholly circumstantial evidence. Significantly, we may not substitute our judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed.

**Commonwealth v. Brewer**, 876 A.2d 1029, 1032 (Pa. Super. 2005) (citations and internal quotations omitted).

Appellant relies on the cases of **Farquharson**, **supra**, and **Karkaria**, **supra**, in characterizing his challenge as one pertaining to the sufficiency of the evidence. In **Farquharson***,* the Pennsylvania Supreme Court held that a jury's verdict of guilty cannot stand whenever the evidence introduced by the Commonwealth is so lacking that the jury's verdict is the product of "surmise and conjecture." 354 A.2d at 550. In **Karkaria**, our Supreme Court held that whenever "evidence offered to support a verdict of guilt is so

unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury cannot be permitted to return such a finding." 625 A.2d at 1170 (citation and quotation marks omitted).

It is well-settled "that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant[.]" **Commonwealth v. Davis**, 650 A.2d 452, 455 (Pa. Super. 1994). "If the factfinder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict." **Commonwealth v. Hopkins**, 747 A.2d 910, 914 (Pa. Super. 2000) (citation omitted). **See, e.g., Commonwealth v. Charlton**, 902 A.2d 554 (Pa. Super. 2006) (affirming convictions for sexual offenses that were based on the testimony of young child). Further, the law recognizes that a child victim "may have only a vague sense of the days of the week, the months of the year, and the year itself," and "a certain degree of imprecision concerning times and dates must be tolerated." **Commonwealth v. Groff**, 548 A.2d 1237, 1242 (Pa. Super. 1988).

Where evidence presented by the defense challenges the victim's testimony, it is for the finder of fact to resolve contradictory testimony and questions of credibility. **Hopkins**, **supra** at 917. An appellate court cannot substitute its judgment for that of the trier of fact. **Charlton, supra** at 561.

In support of his claim that the "verdict [was] founded upon inherently unreliable, inconsistent and contradictory evidence," Appellant's Brief at 13, Appellant emphasizes that AB did not report the abuse until she was fourteen years old. He also avers that AB's testimony at trial "varied fundamentally" from her original complaint;[5] AB was unable to say with certainty at which of two houses the abuse occurred; and the testimony regarding where AB told her mother of the abuse was inconsistent. Appellant also states that there was no physical evidence to support AB's accusations and notes that CHOP did not contact police after AB's 2004 physical examination. *Id*. at 15-17.

Our review of the trial testimony indicates that AB testified in detail about the layout of the two houses in which she lived with her aunt. *See* N.T., 1/29/15, at 98-99 and 105-106. She testified in explicit detail about the sexual assaults perpetrated by Appellant, and where in her aunt's houses they occurred. *See id*. at 101-104, 107-108. She further testified that she never told anyone about the assaults when they occurred because she was "scared" and "afraid." *Id*. at 105, 109. AB stated that she was fourteen when she first spoke about the abuse after she tried to hurt herself for the

---

[5] Appellant asserts that at trial, AB testified that there were two instances of inappropriate touching, but that when speaking to SVU Detective Blowes, "AB had alleged that she had seen Appellant's penis on three occasions and been improperly touched by him on three occasions." Appellant's Brief at 16, citing N.T., 1/29/15, at 186-190, 194. There is nothing in the pages cited by Appellant to support his claim of AB's testimony having a "fundamental variance" from her original complaint.

second time, and that even though she was "scared [to tell her mother,] it was kind of a relief." *Id*. at 113, 117. AB further stated that, after she told her mother, her aunt stopped speaking to her for a while because "she didn't believe it" and still "doesn't believe it." *Id*. at 119.

AB also testified that she believed that she was six or seven years old when the assaults happened. *Id*. at 110. When presented on direct examination with her original statement given to detectives in which she indicated that she thought she was about eight years old at the time of the assaults, she stated that she was not "really sure how old [she] was[.]" *Id*. at 123. She also testified that her memory of the incidents has gotten worse as time has passed. *Id*. at 119.

After reviewing the record evidence and Appellant's arguments, we disagree that Appellant's claim falls under the purview of *Karkaria* as a sufficiency challenge. AB never wavered in her testimony with respect to the fact that the assaults occurred, where they occurred, and how they occurred. We are not persuaded that her inability to recall exactly how old she was renders her testimony "inherently unreliable, inconsistent and contradictory." As noted above, child victims are provided a certain amount of leeway in recalling their assaults. The jury here was fully apprised of all of the circumstances attendant to and including the reporting of the assaults, and AB's admission that, due to the passage of time, her memory was not entirely fresh as to how old she was when the assaults occurred.

Appellant is basically asking this Court to reassess the testimony presented at trial and the weight given that evidence by the jury. As noted above, resolving contradictory testimony and questions of credibility are matters for the finder of fact, and we will not substitute our judgment for that of the trier of fact. Accordingly, Appellant's "sufficiency" challenge fails.[6]

In his second issue, Appellant avers that the trial court erred in forbidding counsel from questioning AB's mother about certain information pertaining to AB's father's incarceration. Specifically, Appellant avers:

> Pursuant to the trial court's restriction, and to [A]ppellant's peril, the jury was deprived of the opportunity to observe [AB's mother] confronted with this information that would have clearly established a motive to fabricate charges against him. (NT 2/2/15, p.22)

Appellant's Brief at 23.

In support, Appellant cites to the following exchange that occurred while AB's mother was testifying at trial:

> **Defense Counsel**: So [Appellant] and [AB's father] were friendly; is that correct?
>
> **AB's Mother**: Correct.
>
> **Defense Counsel**: And would you agree with me that there was a period when that friendship ended?
>
> **Prosecutor**: Objection.

---

[6] To the extent that Appellant disputes the weight given the evidence, Appellant waived this challenge by failing to raise it in his Pa.R.A.P. 1925(b) Statement. ***Commonwealth v. Castillo***, 888 A.2d 775, 780 (Pa. 2005).

> **The Court**:  Sustained.
>
> **Defense Counsel**:  Well, ma'am, do you agree with me that right now as we sit here today, that [Appellant] is not on good or friendly terms with [AB's father]?
>
> **Prosecutor**: Objection.
>
> **The Court**:  Overruled.  Do you know?
>
> **AB's Mother**:  He violated his daughter, so, no, there are no good terms between him and [Appellant].
>
> **Defense Counse**l:   Well, isn't it true that the relationship between [Appellant] and [AB's father] ended before 2012 when these accusations surfaced?
>
> **AB's Mother**:  I believe it ended in – I think it was 2012.  I'm not sure the exact year.
>
> **Defense Counsel**: Well, would you agree with me that there was actually a problem between [Appellant] and [AB's father] before these allegations surfaced?
>
> **Prosecutor**:  Objection.
>
> **The Court**:  Sustained.

N.T., 2/2/15, at 22-23.  Defense counsel then changed topics before ending her cross-examination of AB's mother.  ***See id***. at 23-24.

Pennsylvania Rule of Evidence 103(a), entitled "Preserving a Claim of Error," provides, in relevant part:

> **(a) Preserving a Claim of Error.** A party may claim error in a ruling to admit or exclude evidence only:
>                                    ...
>
> (2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.

- 10 -

Pa.R.E. 103(a).

This Court has explained that

> It is always the duty of the party making an offer when its admissibility is challenged, to state the purpose in such manner that the court may perceive its relevancy[.] In the trial of a case, where an objection to a question is sustained, it is essential to put in the record[ ] an offer of proof of the relevant facts that it is desired to prove by testimony then available. The reviewing court can then consider both the relevancy of the evidence and whether the refusal to receive it was harmful.

*Crockfort v. Metro. Life Ins. Co.,* 3 A.2d 184, 186 (Pa. Super. 1938) (internal quotations and citations omitted). *See also Mescanti v. Mescanti*, 956 A.2d 1017, 1024 (Pa. Super. 2008) (holding that "[a]lthough the trial court sustained Wife's objection to [a] particular question [during Husband's cross-examination], Husband did not inform the court that he wished to challenge Wife's motive for filing the PFA petition. Because he did not alert the trial court as to the reason for his inquiry, he cannot now claim on appeal that the court's refusal to do so results in reversible error. *See* Pa.R.A.P. 302(a) (providing issues cannot be raised for the first time on appeal).").

Here, the record is devoid of any indication that Appellant made an offer of proof with respect AB's mother's knowledge of any information pertaining to AB's father's incarceration, or that his counsel otherwise

attempted to explain to the court what she was attempting to elicit from AB's mother and why.[7]  Accordingly, this issue is waived.

Judgment of sentence affirmed

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/7/2016

---

[7] In fact, the day after AB's mother testified, and just prior to Appellant testifying, Appellant's counsel informed the court that she did not intend to "go down that road other than to talk about the relationship [between Appellant and AB's father] in general terms and general dates."  N.T., 2/3/15, at 54.