J-S72022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SEAN GREGORY WEAVER | : | |
| | : | |
| Appellant | : | No. 813 MDA 2018 |

Appeal from the Judgment of Sentence May 2, 2018
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0001928-2017

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY SHOGAN, J.:                         **FILED MARCH 20, 2019**

Appellant, Sean Gregory Weaver, appeals from the judgment of sentence entered following his conviction of hindering apprehension or prosecution.[1]  We affirm.

The trial court summarized the history of this case as follows:

> [Appellant's] charges arise as a result of an incident that occurred on July 29, 2017 at the residence of [Appellant] at ... Union Street (hereafter [the Residence]) in the City of Lebanon, Pennsylvania.  At about 3:49 pm on that date, Officer Ryan Adams (hereafter [Officer Adams]) of the Lebanon City Police was sent to [the Residence], (N.T. 5) as a result of a call that a wanted subject by the name of Nathan Graham (hereafter [Graham]) was seen in the area of [the Residence].  (N.T. 5).  [Graham] was wanted for a Felony warrant issued by the Lebanon City Police.  (N.T. 5).
>
> [Officer Adams] responded to [the Residence] in a marked Lebanon City Police car and knocked on the front door loudly a minimum of three times (N.T. 7).  After no one answered the front

---

[1] 18 Pa.C.S. § 5105(a)(1).

door, [Officer Adams] went to the back door of [the Residence]. As he was returning to the front of [the Residence] [Appellant] was at the side of [the Residence], having emerged from the front door (N.T. 8).

[Officer Adams] informed [Appellant] of his purpose for being at [the Residence] and confirmed the relationship between [Appellant] and [Graham]. [Graham's] mother, Corinne [Graham] (hereafter [Corinne]) and [Appellant] date each other. Both spend considerable time at [the Residence]. (N.T. 8, 38). [Officer Adams] did not see [Corinne] at [the Residence] during the interaction on July 29, 2017.

[Officer Adams] detected the odor of an alcoholic beverage on [Appellant's] breath. He described [Appellant's] speech as "slurred". (N.T. 9). [Appellant] acknowledged being intoxicated. (N.T. 25).

[Appellant] acknowledged knowing that [Graham] was wanted for a felony by the Pennsylvania State Police on an active arrest warrant. (N.T. 10). He said that [Graham] was told that he "wasn't welcome in the house anymore." (N.T. 10, 24-25). [Officer Adams] requested to search [the Residence]. (N.T. 10). [Appellant] agreed to the search and escorted [Officer Adams] into [the Residence]. (N.T. 28). The search began on the second floor. [Appellant] opened all doors, including closets, on the second floor of [the Residence]. After checking the second floor, [Officer Adams] and [Appellant] went down to the first floor. (N.T.11). With the exception of one particular door in the kitchen area, [Appellant] opened all first floor doors. (N.T. 11).

[Officer Adams] stopped [Appellant] as he progressed from the kitchen to the living room to ask about the skipped door. [Appellant] informed [Officer Adams] that the doorway led to the basement and that if anyone had entered the basement it would have been heard, due to a creaky door. (N.T. 13). During [Officer Adams's] time in [the Residence], he did not hear any noises related to someone entering or moving about [the Residence]. (N.T. 13). [Officer Adams] requested that [Appellant] open the basement door in order to search the basement. At the bottom of the basement stairs [Graham] was visible. (N.T. 13). [Officer Adams] took [Graham] into custody. (N.T. 15). [Appellant] did not deny knowledge of how [Graham] got into [the Residence], nor did he question [Graham] as to why he [was] at [the

- 2 -

Residence]. [Appellant] only stated: "It's over Nathan. Am I going to be charged with this?" (N.T. 16, 34).

Trial Court Opinion, 7/11/18, at 2-4.

On September 12, 2017, Appellant was charged with hindering apprehension or prosecution. On March 2, 2018, a jury convicted Appellant of the sole crime charged. On May 2, 2018, the trial court sentenced Appellant to serve a term of incarceration of nine to twenty-three months. Appellant did not file post-sentence motions. Appellant filed this timely appeal on May 16, 2018. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Whether the verdict of guilty was against the weight and sufficiency of the evidence and testimony presented at trial?

2. Whether the Court committed prejudicial error by structuring a sentence with [a] nine (9) month minimum given the testimony and evidence presented at trial?

Appellant's Brief at 6.

In his first issue, Appellant purports to argue that the verdict was against the weight of the evidence and that there was insufficient evidence to support his conviction of hindering apprehension or prosecution. However, claims challenging the weight of the evidence and sufficiency of the evidence are clearly distinct. *See Commonwealth v. Widmer*, 744 A.2d 745 (Pa. 2000) (discussing the distinctions between a claim challenging the sufficiency of the evidence and a claim that the verdict is against the weight of the evidence). A challenge to the weight of the evidence questions which evidence

is to be believed. **Commonwealth v. Charlton**, 902 A.2d 554, 561 (Pa. Super. 2006). "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." **Id**. (quoting **Commonwealth v. Galindes**, 786 A.2d 1004, 1013 (Pa. Super. 2001)). Appellant attempts to address both challenges to weight of the evidence and sufficiency of the evidence in an intermingled argument section in his brief to this Court. Appellant's Brief at 10-12.

However, to the extent Appellant endeavors to present a typical challenge to the weight of the evidence, we observe that such claim is waived because Appellant has failed to preserve a challenge to the weight of the evidence for our review. Pa.R.Crim.P. 607 and its comment instruct that in order to preserve for appellate review a claim that a verdict is against the weight of the evidence, the issue must be raised with the trial judge in a motion for a new trial either orally or in writing prior to sentencing or in a post-sentence motion. Pa.R.Crim.P. 607. Here, Appellant never filed with the trial court an oral or written motion for a new trial prior to sentencing, or a post-sentence motion that challenged the weight of the evidence. Accordingly, we conclude that any portion of the issue that challenges the weight of the evidence is waived. Pa.R.Crim.P. 607; **Commonwealth v. Butler**, 729 A.2d 1134, 1140 (Pa. Super. 1999) (holding that a challenge to the weight of the evidence is waived for failure to present the issue first to the

trial court). Accordingly, we will review this claim as solely a challenge to the sufficiency of the evidence.

Specifically, Appellant contends that the Commonwealth failed to establish through direct evidence that Appellant knew or should have known that Graham was hiding in Appellant's basement. Appellant's Brief at 10. Appellant asserts that merely finding Graham present in the basement is not sufficient for a conviction of hindering apprehension or prosecution. *Id*. at 11.

Our standard of review is well established:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943-944 (Pa. Super. 2011).

Pursuant to the Crimes Code, hindering apprehension or prosecution is defined in pertinent part as follows:

- 5 -

**Hindering apprehension or prosecution.**

**(a) Offense defined.--**A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime or violation of the terms of probation, parole, intermediate punishment or Accelerated Rehabilitative Disposition, he:

> (1) harbors or conceals the other[.]

18 Pa.C.S. § 5105(a)(1).

The trial court offered the following analysis concerning the evidence presented by the Commonwealth:

> [Appellant] argued at trial that he had no knowledge of [Graham's] existence in his [residence] at the time of [Officer Adams's] search. The jury obviously did not believe [Appellant] and there was ample evidence to support the jury's conclusion. Among that evidence was the following:
>
> ● The [residence] where [Graham] was located was owned and occupied by [Appellant].
>
> ● [Appellant] was located at his [residence] when [Graham] was discovered at that location.
>
> ● [Appellant] did not immediately respond to the door of his residence when [Officer Adams] knocked on the door. This afforded time for [Graham] to hide.
>
> ● When [Appellant] escorted [Officer Adams] through the [residence] on a search, he opened all doors except the one that led to the area where [Graham] was discovered.
>
> ● When [Officer Adams] did discover [Graham], [Appellant] did not express surprise. Rather, he stated: "It's over, Nathan."
>
> ● After [Graham] was discovered [Appellant] asked [Officer Adams] whether he would be charged. This evinced some knowledge on the part of [Appellant]

- 6 -

> that he had acted inappropriately in harboring [Graham].
>
> In the opinion of this Court, the above is sufficient to justify the [jury's] verdict.

Trial Court Opinion, 7/11/18, at 8-9.

Our review of the record confirms that Appellant knew that Graham had an active arrest warrant at the time Officer Adams was searching Appellant's home. N.T., 3/2/18, at 10. The parties also stipulated to this fact. *Id*. When Officer Adams arrived at Appellant's residence, he loudly knocked on the front door three times, and eventually went around the exterior of the house. *Id*. at 7-8. As the officer was returning to the front door, he encountered Appellant on the side of the house. *Id*. at 8. Appellant denied that Graham was inside of the house, but permitted Officer Adams to search the residence. *Id*. at 10-11. Appellant escorted the officer through the house. *Id*. at 11. The officer explained what transpired with Appellant during the search with the following testimony:

> We walked up the stairs. We checked the second floor of the house. He opened closet doors for me. He opened the doors and so and [sic] so forth that were separating the different rooms. Moved the curtains to the side.
>
> We went down to the first floor then after checking the second floor. And we checked that area, but as we were walking into the kitchen of the residence, I noticed that [Appellant] did not open a particular door for me. It was the door between the kitchen and the living room. There was like a small hallway that separated those two rooms. So we checked the kitchen area and then he walked back over toward the living room and I stopped at the door that he had missed and I asked if [sic] where that door lead [sic].

* * *

Q. With respect to the second floor, [Appellant] opened every closet door for you?

A. Yes.

Q. And every other door to every other room?

A. Yes.

Q. And then you go down to the first floor. When you get into the kitchen area there's one specific door that he does not open?

A. Correct.

* * *

Q. Now did you ask him where that doorway led?

A. I did. He said that it led down into the basement. He also added that if somebody had gone into the basement because the door is so creaky, that I would have heard someone entering the basement. So I requested to check any way because it was the last area of the house to check.

*Id*. at 11-13.

The record further reflects that, after Appellant opened the basement door and turned on the lights, the officer saw Graham standing at the bottom of the steps. *Id*. at 14. The officer testified that Appellant did not seem shocked or surprised, and simply said, "It's over, [Graham]." *Id*. After Graham was taken into custody, Appellant asked the officer whether Appellant would be "charged." *Id*. at 15.

This evidence, viewed in the light most favorable to the Commonwealth, although circumstantial, establishes beyond a reasonable doubt that Appellant

knew Graham was hiding in Appellant's basement. Therefore, Appellant's claim that the Commonwealth failed to present sufficient evidence to prove the crime of hindering apprehension or prosecution beyond a reasonable doubt lacks merit.

Appellant's final issue in his statement of questions presented insinuates that the trial court erred in sentencing Appellant to serve a minimum sentence of nine months of incarceration. Appellant, however, completely failed to develop this argument in his brief. Accordingly, we are constrained to conclude that Appellant has abandoned any claim in this regard by failing to properly develop it in the argument portion of his brief, and we find this issue waived. Pa.R.A.P. 2119(a). **See Commonwealth v. Tha**, 64 A.3d 704, 713 (Pa. Super. 2013) (stating that "[f]ailure to present or develop an argument in support of a claim causes it to be waived"). Therefore, we will not address such issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/20/2019

- 9 -