J-S28033-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAVIER GODOY-RICO, | : | |
| | : | |
| Appellant | : | No. 1782 MDA 2018 |

Appeal from the Judgment of Sentence Entered August 24, 2016
in the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0001598-2015

BEFORE:   BOWES, J., MCLAUGHLIN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:                **FILED JUNE 28, 2019**

Javier Godoy-Rico (Appellant) appeals *nunc pro tunc* from the judgment of sentence imposed following his convictions for sexual assault, aggravated indecent assault, and simple assault. Upon review, we affirm.

In April 2015, a criminal complaint was filed against Appellant, charging him with, *inter alia*, the abovementioned crimes.  These charges arose from a January 2015 sexual assault.  Eventually, Appellant proceeded to a jury trial.  We set forth the trial court's summary of the facts presented at Appellant's trial.

> The Commonwealth first called [T.A.], who was the victim in this case. In her testimony, [T.A.] described the events that occurred on January 25, 2015.  On that night, [T.A.] had been working at Bourbon Bar & Grill.  Once [T.A.] finished work, she stayed at Bourbon Bar & Grill to listen to a band that was playing there.  [T.A.'s] friend, Fernando Rivera ("Rivera"), arrived with Appellant at Bourbon Bar & Grill to listen to the band.   []

---

*Retired Senior Judge assigned to the Superior Court.

Appellant, Rivera, and [T.A.] stayed until closing, around 2:00 a.m., and there was supposed to be a party at Appellant's house afterwards that [T.A.], Appellant, Rivera, and three other people were supposed to attend.

To go to Appellant's house, Appellant and [T.A.] drove together in [T.A.'s] car, while the rest took a separate car. [T.A.] and Appellant drove back to Appellant's apartment, which was located above a business. Once Appellant and [T.A.] arrived at Appellant's apartment, they sat on Appellant's couch, and Appellant gave [T.A.] a beer, which [T.A.] may have had just a sip out of. No one else arrived at the apartment, but [T.A.] heard Appellant's phone ring multiple times, which he did not answer.[10] At no point did Appellant and [T.A.] have a conversation or understanding that it would be just the two of them at the apartment.

_____
[10] The Commonwealth had called Detective Mark Baker, a criminal investigator with the Northern York County Regional Police Department, to testify. Detective Baker testified that he had received Appellant's cell phone from Hanover Borough Police following and related to the incident. He testified that he had "perform[ed] an analysis of the cell phone pursuant to [ the] … ongoing investigation," and on January 25, 2015 from 2:18 a.m. until 2:25 a.m., he found that "there were six missed calls on [Appellant's] phone from someone" that Appellant had designated in his phone as Fernando.

On the couch, Appellant tried to kiss and touch [T.A.], making her nervous. Then, she asked [] where the bathroom was, and Appellant pointed out a doorway to her. She went to that doorway, but she realized it was to a bedroom, after entering through the doorway. When she turned around to leave the room, she found Appellant standing in the same doorway.

[T.A.] attempted to move around Appellant, but he tried to shove her down. When she tried to get away from [] Appellant again, he grabbed her pants from behind her, and "basically had [her] pants already kind of at [her] ankles by grabbing [her] forcefully when [she] was trying to get away from him." [Appellant] pushed her onto his bed, and "he was trying to shove his hands inside of [her. They] started fighting. [She] tried to fight him off."

During this, [T.A.] tried to punch and scratch Appellant, despite not having [long] fingernails. Further, during the incident, [T.A.] testified that [] Appellant hit her head multiple times and pulled her hair. [T.A.] testified that Appellant's fingers penetrated [T.A.] vaginally and anally. Then, [T.A.] testified that she stopped fighting back when she realized she was not going to get away from him and cried through the rest of the incident.

In addition, [T.A.] "kept telling [Appellant] that [she] needed to go home to her children," but he did not stop. Before she stopped fighting back, [T.A.] told Appellant "Stop, no, I don't want this," and [T.A.] noted in her testimony that she said this in two different languages. Then, [T.A.] testified that Appellant penetrated her vaginally, orally and anally with his penis and that he "forcibly climbed on top of [her] chest, with his knees on top of [her] arms, his legs were open, and [her] arms were at his side, and then he tried to forcibly make [her] give him oral sex." At no point did [T.A.] consent or indicate to Appellant that she wanted to participate in any form of sexual intercourse. After the incident ended, Appellant asked [T.A.] to take a shower, but she refused and was able to then go home.

When the Commonwealth asked [T.A.] about her injuries that occurred as a result of the incident, [T.A.] testified that she had "lumps and bruises on [her] head. [She] had a bruise on [her] eye in the corner of [her] eye socket. [She] had scratch marks, bite marks, [and] bruises that happened immediately and bruises that showed up several days later." [T.A.] also testified that the injuries to her head and eye occurred because Appellant punched her in the face when he initially pulled [her] pants down and got [her] on the bed ... when [she] started fighting him off of [her,] and [Appellant] fought [T.A.] back." When [T.A.] arrived home, she tried to use her boyfriend's cell phone to call the police, but he would not let her, and, so, she went to Turkey Hill [convenience store] to call the police.[1]

---

[1] There was testimony elicited from T.A. that when she arrived home her boyfriend Alex was upset and demanded to know what had happened to her before he would allow T.A. to use the phone to call police. N.T., 6/17/2015, at 120. She decided "it wasn't a good idea to tell Alex what happened at the moment[,]" so she left the home and drove to Turkey Hill to contact the police. On cross-examination, defense counsel read a portion of T.A's

After [T.A.] testified, the Commonwealth called Sergeant Jason Byers ("Sergeant Byers") and Officer Christine Mee ("Officer Mee") to testify. Sergeant Byers and Officer Mee responded to the Turkey Hill that [T.A.] was at and they found her standing outside. Sergeant Byers state[d] that [T.A.] appeared somewhat disheveled and upset. Similarly, Officer Mee described [T.A.] as looking "disheveled. Her hair was up, but kind of messed up. She just looked like she had been crying. Her eyes were kind of puffy, makeup was a little runny."

After receiving a description of the location [where] the incident occurred, [Sergeant] Byers went to the location, took pictures of the outside of the building and went back to [T.A.] to ask her if the pictures were of the attack's location. [T.A.] confirmed it was the right location, and she described her attacker to Sergeant Byers as a "Hispanic male … wearing black diamond stud earrings." After [T.A.] confirmed that it was the correct location, Sergeant Byers went back to the apartment with two search warrants. No one was in the apartment at the time.

While Officer Mee and Sergeant Byers executed the search warrant on the apartment, another officer stood in the apartment building's hallway and notified Sergeant Byers and Officer Mee that someone was in the hallway. When Sergeant Byers went into the hallway, he determined that [he saw] Appellant[, and identified him as] the suspect and detained him. Sergeant Byers took a photograph of [] Appellant at that time, who was wearing a black diamond square earring in his right ear, which matched [T.A.'s] description of her attacker. Appellant told Sergeant Byers that he was the only one in that apartment and that he had consensual intercourse with [T.A.].

Then, the Commonwealth called Abigail Young ("Young") to testify. On January 25, 2015, Abigail Young ("Young") was a registered nurse and a sexual assault forensic examiner (also known as a "safe nurse"). On that same date, Young conducted a sexual assault exam on [T.A.] and wrote a report. In Young's report [], she noted that [T.A.]:

---

statement to police, which stated that she told police that when she arrived home, Alex had accused her of cheating on him. *Id.* at 122.

- 4 -

appear[ed] disheveled, wearing a black sweatshirt, T-shirt, and maternity jeans, with black shoes. Black T-shirt is torn at the left neck. Black bra is torn in the middle, and the black tank shoulder straps are stretched out. [T.A.'s] eyes are puffy and red; she appears to have been crying. Her hair is pulled up onto the top of head with a band, and the loose bun is clumpy.

Young also testified that she wrote in her report [] that there was swelling and a raised area on the right side of [T.A.'s] face, which was also visible in a picture[.] … Then, Young testified that [T.A.] had the following injuries: bite mark patterns on the right side of [T.A.'s] neck …, abrasions on [T.A.]'s center back and lower back, scratch marks on [T.A.'s] neck and mid back …, and bruising inside [T.A.'s] rectum.

Lastly, Appellant testified during trial. Appellant testified that he had consensual vaginal, oral and anal intercourse with [T.A.] and that he had also vaginally penetrated [T.A.] with his fingers.

Trial Court Opinion, 5/1/2018, at 3-10 (some quotation marks and footnotes omitted).

Following trial, Appellant was convicted of the aforementioned crimes, and on August 24, 2016, the trial court sentenced Appellant to an aggregate five to 10 years' incarceration plus 30 days' probation. Appellant timely filed a post-sentence motion, which the trial court denied. Post-Sentence Motion, 8/31/2016. This appeal followed.[2,3] On appeal, Appellant challenges the

---

[2] On September 23, 2016, Appellant timely filed a notice of appeal. On November 22, 2016, this Court issued an order dismissing Appellant's appeal for failure to file a docketing statement pursuant to Pa.R.A.P. 3517. On September 26, 2017, Appellant *pro se* filed a petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, averring counsel had abandoned him and seeking the reinstatement of appellate rights, which the PCRA court granted. Order, 1/22/2018.

sufficiency and weight of the evidence to sustain his convictions. Appellant's Brief at 4.

With respect to Appellant's sufficiency claims, Appellant concedes that there was sexual contact between Appellant and T.A. Appellant's Brief at 12. However, he contends that the testimony of the Commonwealth's witnesses, when considered along with his testimony, did not prove beyond a reasonable doubt that the sexual contact was not consensual. *See id.* ("The fact that sexual intercourse occurred is insufficient, in and of itself, to support convictions for sexual assault and aggravated indecent assault. Testimony regarding injuries was provided by both [T.A.] and [Young]; however, the cause of the injuries were [*sic*] less clear due to the testimony of Appellant that [T.A.] left his apartment after their encounter without injury and the evidence regarding [T.A.'s] boyfriend and his aggressive response to her late night arrival.").

Our standard of review in challenges to the sufficiency of the evidence is to determine

> whether, viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the

_____

[3] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 716 (Pa. Super. 2015) (citation omitted).

A person commits sexual assault "when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S. § 3124.1. "[A] person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if[,]" *inter alia*, "the person does so without the complainant's consent[.]" 18 Pa.C.S. § 3125(a)(1). "[A] person is guilty of assault if he:[] attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa.C.S. § 2701(a)(1).

At trial, T.A. testified that Appellant penetrated her vaginally, orally, and anally with his penis and fingers without her consent. N.T., 5/9/2016, at 91, 93, 95. Specifically, T.A. testified that she attempted to fight Appellant off of her, move away from him, and told him "no" several times, in two different languages, all to no avail. *Id.* at 88, 90-92. T.A. testified that throughout this encounter Appellant pulled her hair, hit her in the head multiple times, and forced himself upon her. *Id.* at 94, 118. This testimony

alone is sufficient to sustain Appellant's convictions for sexual assault, aggravated indecent assault and simple assault. ***See Commonwealth v. Charlton***, 902 A.2d 554, 562 (Pa. Super. 2006) ("This Court has long-recognized that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses. If the factfinder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict.") (internal quotation marks and citations omitted). It was within the province of the jury, as fact-finder, to believe T.A.'s testimony that Appellant attacked, injured and sexually assaulted her, and discredit the testimony of Appellant that the encounter was consensual and T.A. left Appellant's apartment unharmed. ***See Commonwealth v. Miller***, 172 A.3d 632, 642 (Pa. Super. 2017) ("Resolving contradictory testimony and questions of credibility are matters for the finder of fact."). In light of the foregoing, Appellant's sufficiency claims fail.

We now turn to Appellant's weight-of-the-evidence issue. In support of his weight claim, Appellant avers "the jury gave inappropriate weight to [T.A.'s] testimony." Appellant's Brief at 15. Specifically, Appellant (1) attacks the veracity of T.A.'s testimony; (2) claims "T.A's altercation with her boyfriend upon her return home" called into question her testimony

concerning her injuries; and (3) argues that the jury did not give adequate consideration to Appellant's testimony and version of events. *Id.* at 13-15.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

> However, the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is not unfettered. The propriety of the exercise of discretion in such an instance may be assessed by the appellate process when it is apparent that there was an abuse of that discretion.

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted). *See also Commonwealth v. Britton*, 134 A.3d 83, 86 (Pa. Super. 2016) ("The trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.") (citation omitted). "A motion alleging the verdict was against the weight of the evidence should not be granted where it merely identifies contradictory evidence presented by the Commonwealth and the defendant." *Commonwealth v. Chamberlain*, 30 A.3d 381, 396 (Pa. 2011).

As the trial court correctly observed, it is within the province of the jury, sitting as fact-finder, to review the evidence and assess the credibility of the testifying witnesses. **See** Trial Court Opinion, 5/1/2018, at 18 (finding Appellant's weight-of-the-evidence claim without merit because "the evidence was sufficient to support the convictions, and there is no reasonable argument that the jury mis-weighed the evidence. It was within the jury's discretion whether to find the testimony of the witnesses credible."). **See also Commonwealth v. Williams**, 854 A.2d 440, 445 (Pa. 2004) ("In criminal proceedings, the credibility of witnesses and weight of evidence are determinations that lie solely with the trier of fact.").

In reviewing the issue before us, we reiterate that "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." **Widmer**, 744 A.2d at 753.

> The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

**Id.** (citation omitted).

With this in mind, upon review of the record, we discern no abuse of discretion in the trial court's determination. Appellant has not alleged, and

we do not conclude, that the trial court acted unreasonably, or displayed prejudice, bias, or ill-will when dismissing Appellant's weight claim. No relief is due.

Accordingly, after a review of the briefs, record, and applicable case law, we are not persuaded that Appellant's issues warrant relief from this Court.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary
Date: 06/28/2019