J-S49041-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUA LUKE HALL | : | |
| | : | |
| Appellant | : | No. 547 WDA 2020 |

Appeal from the Judgment of Sentence Entered July 9, 2019
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000197-2019

BEFORE:   OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:              FILED DECEMBER 11, 2020

Appellant, Joshua Luke Hall, appeals nunc pro tunc from the judgment of sentence entered in the Court of Common Pleas of Fayette County after a jury found him guilty of two counts of Involuntary Deviate Sexual Intercourse with a Child and one count of Indecent Assault of a Person less than Thirteen Years of Age.  Sentenced to two consecutive sentences of 72 to 144 months' incarceration, for an aggregate sentence 144 to 288 months' incarceration, Appellant contends the verdicts were against the weight of the evidence.  We affirm.

The trial court sets forth the pertinent facts and procedural history of the case, as follows:

On September 24, 2018, N.G., the victim, had resided with his aunt and uncle for approximately four years, from the time he was

_____

[*] Former Justice specially assigned to the Superior Court.

seven years of age until he was eleven. Prior to residing with his aunt and uncle, he had lived with his grandmother until she passed away (N.T. at 14). He had resided with his Mother and [her boyfriend, Appellant,] prior to living with his Grandmother.

When N.G. began to reside with his aunt and uncle, he was seriously delayed educationally and developmentally, but those delays had been corrected during the years he resided with his aunt and uncle. N.T. at 8-9. At the time of trial, he had completed fourth grade and had made the honor roll. N.T. at 9.

On September 24, 2018, N.G. got into trouble for playing show me yours and I'll show you mine with another boy in his Aunt's house. He was informed that it was not proper to expose your genital area to another child and he was placed in timeout. Later that day, N.G. informed his aunt that his mother's boyfriend, Appellant herein, had sucked on his penis, which he called his wiener, and then had him suck Appellant's penis.

At trial, N.G. testified to basically the same information that he had told his aunt and the forensic evaluator, Brittany Lock. He told both of them that Appellant had sucked his wiener and then had him suck Appellant's wiener. (N.T. at pg. 22). He stated that this occurred in the bathroom of the house after Appellant cut his hair. It occurred in a house when he resided with his mother, siblings, and Appellant. Id. Appellant had him do this on at least two occasions. N.T. at 25. He further testified that Appellant told him not to tell anyone. N.T. at 26. He testified that he knew what a penis was and this is what the Appellant put in his mouth. He further stated that after having the penis in his mouth he had to "spit out something." N.T. at 27. N.G. testified that he had talked with Brittany who was a forensic interviewer at A Child's Place.

The forensic interviewer, Ms. Locke, testified that the purpose of the interview is to obtain information from the child in a non-leading, non-suggestive manner. The interview was recorded and the tape of the interview was shown to the jury to a stipulated point in the recording. N.T. at 67. She testified that the testimony of N.G. was spontaneous in his answers. However, she admitted that he could not remember exact dates [on which] the incidents occurred. She testified that N.G. did not mention in his statement to her that Appellant ejaculated in his mouth. N.T. at 72. She was not surprised that he did not disclose to her that Appellant ejaculated. She testified that children do not remember all the

exact facts, [and] that there are usually some inconsistencies. N.T. at 75. She testified that there are a number of factors as to why a child would not disclose the abuse. Generally, a child will leave pieces out, then late[r] add [] information. Sometimes, the child will block his memories of the incident or because the incident was so traumatic that the child does not want to talk about it. N.T. at 82.

Additionally, Ms. Lock testified that a child who has been sexually assaulted may make sexual gestures of their own. This happens because the child has learned that although their behavior is bad, it still feels good to them and since it has been done to them, they are curious about having this contact with other children. N.T. at 86.

After being read his Miranda rights, Appellant denied ever sexually assaulting the child. N.T. at 91. Appellant admitted that he did cut N.G.'s hair in the bathroom when he resided with the child's mother.

. . .

On July 9, 2019, Appellant was found guilty and sentenced the same day. On July 15, 2019, and Amended Sentence Order was filed. [Appellant filed a] post sentence motion[, which the trial court denied by Order and Opinion dated October 23, 2019]. Thereafter, on May 8, 2019, counsel for Appellant requested to file an appeal nunc pro tunc and this request was granted. The appeal nunc pro tunc was filed on May 11, 2020.

Trial Court Opinion, 6/4/2020, at 1-2.

Appellant's Statement of Questions Involved presents one issue for our

consideration:

[Were] the verdicts of guilty in this matter [] against the weight of the evidence and so contrary to the evidence and testimony presented at trial as to shock one's sense of justice?

Appellant's brief, at 4.

In his sole issue, Appellant argues that the verdicts were against the weight of the evidence. As Appellant properly preserved this claim in compliance with Pa.R.Crim.P. 607 by raising it first with the trial court in his post-sentence motion, we turn to the merits of Appellant's argument.

We begin with our standard of review:

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

Commonwealth v. Gibbs, 981 A.2d 274, 282 (Pa. Super. 2009) (citations omitted).

"[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." Id. (citation omitted). Therefore, "[a]n appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence, as the trial judge is in the best position to view the evidence presented." Commonwealth v. Charlton, 902 A.2d 554, 561 (Pa. Super. 2006) (citation omitted). To allow an appellant "to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and

uncertain that the verdict shocks the conscience of the court." Commonwealth v. Talbert, 129 A.3d 536, 545 (Pa. Super. 2016) (internal citation omitted).

Instantly, the jury convicted Appellant of IDSI and indecent assault. A person is guilty of IDSI with a child "when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3123(b). Deviate sexual intercourse is defined at 18 Pa.C.S.A. § 3101, and occurs when a person "has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid …" 18 Pa.C.S.A. § 3126(a)(7).

In charging the trial court with erroneously denying his motion for a new trial based on his weight claim, Appellant states that N.G.'s testimony suffered from critical inconsistencies and lacked credibility. Appellant's Brief at 8. Specifically, Appellant points to N.G's pretrial statements that seemed to indicate he would cease performing oral sex on Appellant before ejaculation, whereas, at trial, N.G. indicated differently. Also, Appellant argues that both the four-year delay in making the accusation, and the context in which N.G. made it, further render the verdict shocking. One must question why N.G. did not make the allegations sooner, Appellant insists, given N.G.'s testimony that he felt "safe" living with his grandparents for years after the alleged acts. Why was it that N.G. accused Appellant only after being reprimanded by his aunt

and given a "time-out" for exposing himself to a friend in the aunt's home, Appellant asks.

Appellant also contends the N.G.'s initial interview with the forensic interviewer was tainted by N.G.'s knowledge that his aunt had just spoken with her for a significant time before he was interviewed. Knowing what his aunt likely just reported would have suggested to N.G. that his interview should be consistent with hers, Appellant argues. Without reference to any decisional law expounding upon the importance of inconsistencies, delay, and suggestive influences in child victim accusations, Appellant simply concludes that his "guilty verdicts were not supported by the record" and are "shocking to the judicial conscious." Id.

It is well-settled that "the jury [is] the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses." Commonwealth v. Jacoby, 170 A.3d 1065, 1080 (Pa. 2017). "[I]nconsistencies in eyewitness testimony are not sufficient to warrant a new trial on grounds that the verdict was against the weight of the evidence." Id. at 1081 (citation omitted). "Issues of witness credibility include questions of inconsistent testimony and improper motive." Id. (citation omitted).

"A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit." Id. (citation omitted). Additionally, "the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence

J-S49041-20

from defense witnesses." Commonwealth v. Charlton, 902 A.2d 554, 562 (Pa. Super. 2006) (citation omitted).

Upon review, we conclude that the trial court did not abuse its discretion in denying Appellant's weight claim. N.G. testified that on two separate occasions, when he was seven years old, Appellant caused him to perform oral sex on Appellant and to receive oral sex from Appellant. As noted by the trial court, defense counsel attempted multiple times, both on cross-examination and in closing argument, to discredit N.G.'s accusations as delayed, inconsistent, and the product of suggestion. The jury, however, in exercising its role as sole arbiter of fact and credibility, found N.G. credible and accepted the testimony of Ms. Lock with respect to both the non-suggestive setting for her interview with N.G. and the common inconsistencies arising in child victim testimonies.

Accordingly, we find no merit to Appellant's weight claim where the jury acted properly as the fact-finder, and the trial court, in denying Appellant's request for a new trial based on the weight of the evidence, did not abuse its discretion. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/11/2020