J-A23026-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                      :           PENNSYLVANIA
                                       :
           v.                              :
                                        :
                                        :
JAMES EDWARD DICKANT, JR.       :
                                        :
          Appellant              :     No. 388 WDA 2025

Appeal from the Judgment of Sentence Entered January 29, 2025
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0003652-2021

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:         **FILED: December 16, 2025**

James Edward Dickant, Jr. appeals from the judgment of sentence entered following his convictions for rape by forcible compulsion, rape of a child, sexual assault, and three counts each of endangering the welfare of children and corruption of minors for the abuse of his daughter.[1] He challenges the weight of the evidence for the rape and sexual assault convictions. We affirm.

Dickant was found guilty following a bench trial. The trial court aptly summarized the evidence related to the rape and sexual assault as follows:

> During trial, the victim's adoptive mother, Emily Truckley, testified that shortly after the victim came into her physical custody, which would have been in August of 2020 she began reporting instances of sexual abuse. (Trial Transcript "TT" 9/18/2024 at 9, 11.) One night, the victim

---

[1] 18 Pa.C.S.A. §§ 3121(a), (c), 3124.1, 4304(a)(1), and 6301(a)(1)(i), respectively.

reported to her, that when she was little, she could not recall how old she was, her father "pushed me on to the bed and put his dick inside of me." At the time the victim reported this, she was twelve (12) years old. (TT at 12). Since Foster Parents are mandated to report child abuse, Ms. Truckley immediately contacted the victim's caseworker, made a ChildLine report, and later made the child available for a forensic interview. (TT at 13). Ms. Truckley further explained that later on when she and the victim discussed the sexual abuse, the victim could not remember exactly how old she was but that "she [the victim] knew her dad had just got out of jail." (TT at 18).

At trial, the victim, who was by now 16 years old, testified to living with her biological parents and various other biological family members prior to being placed into foster care. (TT at 23-24). . . .

Regarding inappropriate sexual conduct, the victim testified that [Dickant] on one night, when she was young, possibly aged 6 or 7, "was showing us how to, like, make something, like food from jail. And then after he showed us that, he went downstairs, like to go to sleep. And, um, my mom went back upstairs for something, I don't remember what it was, but she went back upstairs, and I went downstairs, and um, (BRIEF PAUSE), he put his penis inside of me. And then after that, um, my birth father [Dickant] heard the door that was connected to the downstairs basement, so he got off me, and then he went to sleep." (TT at 34). She testified that he placed his penis in her vagina after he removed her underwear and removed his shorts. (TT at 36-37). On cross examination, the victim testified that she believed the sexual assault may have occurred after she was 7 years old which would be after July 23, 2015. (TT at 47). The victim also explained that when she first met with the Children's Bureau worker, she did not feel comfortable disclosing the sexual abuse. (TT at 51).

Carol Hughes, licensed psychologist, testified as an expert in the field of victim behavior and offender behavior in the context of sexual abuse. Ms. Hughes discussed grooming behaviors and delayed disclosure of sexual abuse. (T[T] at 63-65). Typically, there is "a fairly lengthy time delay from when abuse has occurred; and I should say last occurred, because oftentimes, the abuse has a duration in

terms of the length of time the child was abused. So, that time until they make a disclosure to someone." "That's the norm, not the exception. Delayed disclosure is most typical of what we see." (TT at 65).

Pa.R.A.P. 1925(a) Opinion ("1925(a) Op."), filed 5/19/25, at 2-3 (footnote omitted).

The court found Dickant guilty of the above-mentioned offenses. The court sentenced Dickant to an aggregate term of 20 to 40 years' incarceration followed by 12 months' reporting probation. Dickant filed a post-sentence motion, which the trial court denied. This timely appeal followed.

Dickant raises the following question: "Was the verdict rendered in this case at Counts 1-3 against the weight of the evidence?" Dickant's Br. at 4 (suggested answer omitted).

We review a challenge to the weight of the evidence for an abuse of discretion. *See Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013). An abuse of discretion occurs only where there is an "overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Rogers*, 259 A.3d 539, 541 (Pa.Super. 2021) (citation omitted). Since the trial court heard and saw the evidence, we "will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." *Clay*, 64 A.3d at 1055 (citation omitted).

Dickant claims that the verdicts for his rape and sexual assault convictions were against the weight of the evidence. He argues that the

verdicts rested solely on the victim's testimony. Dickant points out that he testified that between February 2015 to 2018, he remained in jail. As such, he claims that "it was not physically possible for Mr. Dickant to have committed the abuse in question." Dickant's Br. at 9.

The trial court rejected Dickant's weight claim. It found the victim's testimony credible and Dickant's testimony not credible.

> The Court finds the testimony of the victim to be credible. It is of little consequence that the victim could not remember the "exact" date of the offense; she testified that the abuse occurred when she was 6 or 7 years old. What is determinative is that she unequivocally remembers the incident occurring and recalled [Dickant] laying on top of her and inserting his penis into her vagina and that he removed her underwear and his shorts. Also, the victim would have been under the age of thirteen at the time of the sexual assault.
>
> In support of finding the victim to be credible, the Court notes that her description of living and sleeping arrangements was consistent with other witnesses' testimony and even that of [Dickant]. [Dickant's] testimony and that of Roxanna Mays (the victim's mother) further bolstered the victim's credibility, for example, confirming that they had sexual relations in the bed downstairs where the victim was sleeping, [Dickant's] inability to recall with certainty when he was actually living in the home, and Ms. May[s'] initially denying having sexual relations with [Dickant] in the presence of the victim, but then admitting she pled guilty to charges stemming from that behavior. Moreover, when the victim was finally able and ready, she reported the sexual abuse to her then foster parent who immediately reported the abuse to authorities. The victim's delay in reporting, as noted by Carol Hughes, is more typical than not for victims of sexual abuse. And, although [Dickant] denied having committed the offense, the Court does not find his testimony credible. He struggled to recall his dates of incarceration which does not support his theory that he could not have committed the offense because he

was incarcerated. He admitted to using illegal substances during those years which easily could have hindered his recollections of events. And, although the mother and grandmother of the victim testified that they never observed [Dickant] sexually assault the victim, the testimony of the victim indicated that no other person was present during the assault. Therefore, their testimony was irrelevant to what occurred between the victim and [Dickant] when the actual sexual assault occurred.

1925(a) Op. at 6-7.

We discern no abuse of discretion. We will not reassess the victim's credibility. As fact finder, the trial court was free to believe all, part, or none of Dickant's self-serving testimony. *See Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa.Super. 2006) (citation omitted) ("The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses").

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/16/2025